**UNITED STATES of America**

v.

**Robert James GAZDA, Appellant.**

**No. 73–2093.**

United States Court of Appeals, Third Circuit.

Argued May 28, 1974.

Decided June 28, 1974.

---

5. H.Rep. 92–231, p. 184, reprinted in 3 U.S.Code, Cong. and Admin.News 92nd Cong., 2d Sess., 1972, p. 5170.

Marjorie H. Matson, Michael P. Malakoff, Berger & Kapetan, Pittsburgh, Pa., for appellant.

Richard L. Thornburgh, U. S. Atty., David M. Curry, Asst. U. S. Atty., for appellee.

Before ROSENN and HUNTER, Circuit Judges, and HANNUM, District Judge.

1. In September 1968 Gazda had submitted the special form for conscientious objector status (SSS Form 150). No action on the conscientious objector claim was taken at that time because he then qualified for the II-A classification.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Appellant, Robert James Gazda, was convicted of failing to submit to induction in violation of 50 App. U.S.C. § 462(a). On November 13, 1973, he was sentenced to a term of four years imprisonment plus costs. On appeal, Gazda alleges various errors by his local draft board and by the trial court. Because we agree with his contention that the order directing him to report for induction was invalid and untimely under Selective Service Regulation § 1631.-7(d)(5), we reverse.

Following the termination of his II-A occupational deferment in the summer of 1970, Gazda claimed that he was entitled to conscientious objector status.[1] On September 10, 1970, after an interview, Gazda's local board denied his conscientious objector claim and classified him I-A, notifying him by a classification card (SSS Form 110). No reasons were given for the denial. Five days later, this court held, in Scott v. Commanding Officer, 431 F.2d 1132 (3d Cir. 1970),[2] that denial of a claim for conscientious objector status without a statement of the basis for the action invalidates the registrant's induction order.

On October 5, 1970, Gazda requested a personal appearance to further present his conscientious objector claim. He failed to report for the scheduled personal appearance on November 3, 1970, and was retained in class I-A. Gazda was notified of the classification the following day and again no reasons were given for the denial of his conscientious objector claim.

On January 5, 1971, Gazda was issued an order to report for induction on January 25, 1971.[3] He notified the board that he would not report for induction and, in fact, did not do so.

2. Scott was held retroactive in United States v. Crownfield, 439 F.2d 839 (3d Cir. 1971).

3. Gazda's random selection number (lottery number) had been reached in 1970.

On May 6, 1971, the local board was directed by the state director of the selective service system to reopen and reconsider Gazda's classification in order to comply with this court's ruling in *Scott*.

On June 1, 1971, Gazda was requested to meet with the local board for an interview on June 8, 1971. Following the interview, which was rescheduled and held on July 13, the board reopened his classification and reclassified him I-A. On July 14, 1971, he was notified of the basis for the denial of his request for conscientious objector classification.

On October 8, 1971, Gazda was ordered to report for induction on November 9, 1971. He failed to appear as ordered and this criminal proceeding followed.

To consider Gazda's contention that his induction order was invalid it is necessary to review the relevant selective service regulations promulgated to implement the induction system. In November 1969, selective service regulations were amended by executive order to provide for induction by lottery. The regulations provided that those registrants between the ages of 19 to 26 who are classified I-A during the calendar year are placed in the First Priority Selection Group (FPSG) for that year.[4] If the registrant's random selection number is not reached during that year, the registrant is placed in a lower priority group.[5] If the random selection number is reached during the year of first priority, the registrant is at that time subject to induction. It was recognized, however, that it might not be possible to issue induction orders during a calendar year to all registrants subject to induction during that year.[6] The regulations thus provide that such registrants are automatically assigned to an Extended Priority Selection Group (EPSG) until April 1 of the following years.[6A] After volunteers, members of the EPSG are the first to be inducted during the calendar year.[7]

A member of the EPSG who is not issued an order scheduling his induction prior to April 1 is assigned to a priority group lower than the FPSG and is eligible to be called only after members of the EPSG and FPSG for that year have been called. An exception to the April 1 deadline is provided for members of the EPSG "who could not be issued orders" prior to April 1. These registrants remain in the EPSG and "shall be ordered to report for induction as soon as practicable."[8] One court that has construed this regulation has stated:

[T]his court takes judicial notice of the basic broad purpose of the new random selection plan of call, which was and is to eliminate as much as possible the ambiguity and cruel uncertainty which heretofore accompanied a young man's assessment of his

---

4. 32 C.F.R. § 1631.7(c)(2)(i).

5. 32 C.F.R. § 1631.7(d)(2).

6. Possible reasons for not issuing an order for induction to a registrant who is subject to induction include reclassification to I–A status late in the calendar year, and lengthy appeals taken from classification decisions.

6A. 32 C.F.R. § 1631.7(d)(4).

7. 32 C.F.R. § 1631.7(b).

8. 32 C.F.R. § 1631.7(d)(5) at the time provided:

Members of the Extended Priority Selection Group who have not been issued orders to report for induction and originally scheduled for a date prior to April 1 shall forthwith be assigned to the lower priority selection group to which they would have been assigned had they never been assigned to the Extended Priority Selection Group; except that members of the Extended Priority Selection Group who would have been ordered to report for induction to fill the last call in the first quarter of the calendar year but who could not be issued orders shall remain in the Extended Priority Selection Group and shall be ordered to report for induction as soon as practicable. Circumstances which would prevent such an order shall include but not be limited to those arising from a personal appearance, appeal, preinduction physical examination, reconsideration, judicial proceeding, or inability of the local board to act.

military responsibility under the Selective Service Act.

United States v. Born, 338 F.Supp. 444, 447 (W.D.Mich.1972). The regulation was clearly intended to create only a narrow exception to the general rule that a registrant would face only a single year of uncertainty as to his induction.

Because Gazda's random selection number was reached in 1970, and because he was not ordered to report for induction in that year, he was assigned to the EPSG on January 1, 1971. On January 5, he was ordered to report for induction. This order, however, was invalid under our decision in Scott v. Commanding Officer, *supra*. The second induction order, which is the basis of this prosecution, was not sent until October 8, 1971, well after the April 1 deadline. We are required to determine, therefore, whether that order, directing Gazda to report for induction on November 9, 1971, was valid under the exception in § 1631.7(d)(5).

Gazda contends that his local board "could have" issued a valid induction order prior to April 1, 1971, and thus the exception in § 1631.7(d)(5) is inapplicable. The Government, on the other hand, maintains that a pre-April 1 order could not have issued because of the "inability of the local board to act." Gazda contests this, pointing out that the delay in issuing a valid order was due to the board's failure to analyze and correct its files to comply with this court's September 15, 1970, decision in Scott v. Commanding Officer. Because, Gazda maintains, compliance with *Scott* could have been effected prior to the April 1 deadline, this case does not present an instance of an "inability of the local board to act."·

The Government argues that during the period from January 25, 1971, when Gazda refused to report for induction, until May 6, 1971, when the state director ordered reprocessing, the local board was unable to act. During that period, Gazda's file was being reviewed by state selective service headquarters pursuant to an administrative practice whereby files of alleged violators are reviewed for possible procedural errors prior to initiation of judicial proceedings. We disagree, however, that such procedures create the type of "inability" contemplated by § 1631.7(d)(5). Were state board review of local board files to automatically "toll" the April 1 deadline, state directors could effectively extend the vulnerability of registrants to induction for an indefinite period—the very result the regulation was designed to prevent.

The Government additionally represents, however, in its brief on appeal:

In 1971 there were 176 local boards in Pennsylvania. During that period the United States was experiencing the peak of draft resistance. Accordingly, the Pennsylvania State Headquarters was deluged with files of violators. The examination of a Selective Service file is an involved matter which requires both time and expertise. Some files run to a hundred or more pages. Under these circumstances the delay in directing Local Board No. 23 to reopen and classify Gazda anew was not unreasonable and certainly was not caused by any arbitrary or capricious action by State Headquarters or Local Board No. 23.

■ We need not decide whether, had these facts been presented in the record, such facts would constitute "inability" to correct Gazda's file within the regulation's time frame. It was conceded by counsel at oral argument that these facts were not before the district court. It is a settled principle that statements made by counsel in briefs are not part of the record and will not be treated as such unless stipulated to or a matter of public record. Kauffman v. Johnston, 454 F.2d 264 (3d Cir. 1972).

We note, moreover, that the local board took no action to correct its files during the interval of nearly four months between our decision in Scott and the board's first induction order to Gazda. At least when the board in-

formed Gazda on November 4, 1970, of its determination to retain him in the I-A classification, its attention should have been directed to the *Scott* requirement that reasons be given for the denial of a conscientious objector claim. We are aware of no reason why local boards were not directed to apply the *Scott* rule to files for registrants whose conscientious objector claims were under active consideration after the date of *Scott* but who had not yet been issued orders to report for induction.

▮ We agree with appellant that under the facts presented in this case the exception to § 1631.7(d)(5) allowing post-April 1 induction orders is inapplicable. *Scott* was decided on September 15, 1970. A period of six and one-half months remained until the April 1, 1971, deadline. The record contains no facts to justify the asserted inability to issue a valid induction order during that period. A time lag of such long duration to correct an original error of the board in failing to supply the registrant with reasons for the rejection of his conscientious objector claim defeats the basic purpose of the random selection plan of call, which was to eliminate "cruel uncertainty" theretofore characteristic of the Selective Service Act.

We believe this case is similar to United States v. Born, 338 F.Supp. 444 (W.D.Mich.1972), where the court dismissed an indictment for failing to submit to induction on the ground that the induction order was invalid under § 1631.7(d)(5). In *Born* a pre-April 1 induction order was cancelled because of the local board's failure to notify the registrant of a classification decision and his appeal rights. The court held a subsequent post-April 1 induction order, issued after the registrant's file was reopened on April 23, invalid. The court stated:

> In this case, the local board "could" have inducted Born before April 1, 1971. It was not "unable" to draft him but, rather, was precluded from complying with the regulatory deadline only by its own mismanagement . . . . [T]he § 1631.7(d)(5) April 1 deadline, if it is to be given any meaning must be read to provide that in such instances of error by the board, at least when undiscovered in time to permit correction before April 1, the burden of the error falls upon the board and not the registrant.

338 F.Supp. at 447.[9]

The government relies on United States v. Lewis, 5 SSLR 3134 (D.Or. 1972), aff'd, No. 73–1927 (September 8, 1972, 9th Cir.), and United States v. Adkins, 474 F.2d 381 (9th Cir. 1973), to support the contention that § 1631.7(d)(5) should be construed to allow post-April 1 induction orders when the delay is caused by the board as well as by the registrant. In neither *Lewis* nor *Adkins* was there evidence of a prior procedural error made by the board nor was there evidence of an unreasonable delay in correcting a file in light of new information. Both factors are present in the instant case and lead to the conclusion that the board's handling of Gazda's file constituted "mismanagement."

For the foregoing reasons, the October 8, 1971, order directing Gazda to report for induction is invalid. It is therefore unnecessary to discuss the other contentions presented. The judgment of the district court will be reversed.

9. *See also* United States ex rel. Iverson v. Rhodes, 465 F.2d 402 (7th Cir. 1972); United States v. Block, 6 SSLR 3044 (D. Minn. January 3, 1972).