UNITED STATES of America,
Appellee-Plaintiff,

v.

Lorenzo HUBBARD,
Appellant-Defendant.

No. 78–1221.

United States Court of Appeals,
Tenth Circuit.

Submitted May 15, 1979.

Decided Aug. 1, 1979.

Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, for appellee-plaintiff.

H. Edward Kluver, Longmont, Colo., for appellant-defendant.

Before SETH, Chief Judge, and McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Lorenzo Hubbard appeals his conviction, following trial to the court, on charges of unlawful distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1). The trial court entered Findings of Fact and Conclusions of Law.

On appeal, Hubbard presents two contentions of error. First, he contends that the Grand Jury Indictment of March 22, 1977, should be dismissed on the basis of reliance on hearsay and conjecture. Second, he challenges the sufficiency of the evidence to support the conviction.

The Government presented two witnesses at trial, both of whom served as special agents with the federal Drug Enforcement Administration (DEA) at all times here involved. Special Agents Julie Bell Williamson (Williamson or Agent Williamson) and David A. Paull (Paull or Agent Paull) testified that they met at the Salt Lake City, Utah, airport late in the afternoon of October 14, 1976. The previous day, Williamson, acting in an undercover capacity, arranged to purchase heroin in Salt Lake City from an undisclosed source. This came about after Agent Williamson received a long-distance phone call on October 13, 1976, while in her Denver, Colorado, DEA office. The call was from a confidential informant advising her that if she would make telephone contact with a Dennis Porterfield in Salt Lake City that she, in turn, would be directed to the source of a heroin "buy" in Salt Lake City. Williamson did place the call to Porterfield and it was agreed that she would meet him at the airport the following day. Williamson arrived at the Salt Lake City airport on an early flight in order to confer with Agent Paull before meeting with Porterfield. [R., Vol. II, pp. 15–17.] The two agents formulated plans for Williamson's "buy," including close surveillance. In part, this was to be accomplished by use of a "body-type transmitter" provided Williamson by Paull, to be worn by Williamson so that her conversations could be received.

Agent Williamson was met by Porterfield at the airport. He drove her to Dell's Cafe. Agent Paull and a number of other agents followed. After entering the cafe and going to the upstairs area, Williamson met Appellant Hubbard, whom she identified at trial as the individual who handed her two plastic bags of heroin in exchange for $950.00.

Agent Williamson, following the exchange, left Dell's Cafe with Porterfield, who had received what Agent Williamson believed to be heroin from Hubbard for his part in the transaction. [R., Vol. II, p. 21.] They were under the surveillance of Agent Paull and other special agents seated in cars parked about one-half block away. Paull heard Williamson, by means of his receiver, demand that Porterfield let her out of his car. Shortly thereafter, Paull met Agent Williamson at the Royal Inn where Porter-

field had driven her. Paull then conducted a "Niku" field test of the substance, and determined that it was heroin. A further test was thereafter made which verified the results of the field test.

Agent Paull testified that he could hear only little bits and pieces of the conversations between Agent Williamson and Hubbard while they were in Dell's Cafe from his receiver. The conversations were not taped. He could not remember anything specific about the conversations. Further, Agent Paull testified that his vehicle did not actually follow Porterfield's car after it left Dell's Cafe, but that other officers did observe the Porterfield vehicle.

Appellant testified and called one witness. Louis Robert White testified that on October 16, 1976, he was living in the "upstairs" area of Dell's Cafe where the drug transaction with Hubbard allegedly took place. White testified that he had known Hubbard for about a year prior to that date; that he was introduced to Williamson in the "living area" of that building about 6:00 p. m. that day, when she arrived with Porterfield; that while he saw Williamson pass some money to Porterfield, he did not observe any trading or exchange between Williamson and Hubbard. [R., Vol. II, pp. 47–51.]

Appellant Hubbard testified that about 6:00 p. m. on October 14, 1976, Porterfield and Williamson came to the apartment area above Dell's Cafe where he (Hubbard) lived; that he had known Porterfield prior thereto; that Porterfield told him that he had been acquainted with Williamson for several months; that Porterfield asked him if he had any "dope" and he responded "no"; that Porterfield then asked him if he [Hubbard] knew where he [Porterfield] could get some [dope] and again he replied "no"; that after a while Porterfield and Williamson departed together; that he did not receive any money that day from anyone; that he did not give a package of any kind to either Williamson or Porterfield.

On cross-examination, Hubbard acknowledged that he had been "on drugs," including heroin; that he knew Porterfield for

about five months prior to October 16, 1976, and that both lived in the apartment areas above Dell's Cafe.

Following closing arguments of counsel, which were directed exclusively to credibility of the witnesses in the context of the Government's obligation to establish the guilt of a defendant in a criminal proceeding beyond a reasonable doubt, the trial court orally found Hubbard guilty of the charge. The court found that on October 14, 1976, in Salt Lake City, Utah, Hubbard did, at a place known as Dell's Cafe, possess a quantity of heroin with intent to distribute and did in fact distribute the same knowingly and intentionally to Julie Williamson, in return for which $950.00 was paid. The court specially found, in regard to the identification "problem," that notwithstanding the conflict in the testimony, the identification of Hubbard by Agent Williamson as the party possessing and distributing the heroin was credible beyond a reasonable doubt. In sum, the court stated that the case presented by the Government was consistent and "hangs together," whereas the defendant's case had inconsistencies and improbabilities making it impossible for him to believe. [R., Vol. II, p. 77.] Thereafter, the court entered written "Findings of Fact and Conclusions of Law" which confirmed the oral findings in some additional detail. [R., Vol. I, pp. 35, 36.]

I.

Appellant Hubbard contends for the first time, on appeal, that the March 22, 1977 indictment handed down by the Grand Jury should be dismissed on the basis of hearsay and conjecture. Prior to discussing the merits of this contention, we note that although the trial court ordered the United States to produce and deliver to Hubbard's counsel "the entire record and transcript of proceedings of the Grand Jury resulting in the Indictment" of March 22, 1977 [R., Vol. I, p. 3], that Appellant Hubbard has failed to tender the "entire record and transcript" as part of the record on this appeal. F.R. A.P. Rule 11(a), 28 U.S.C.A. provides that it is the duty of the appellant to cause to be

transmitted to the court of appeals the record on appeal "including the transcript and exhibits necessary for the determination of the appeal." F.R.A.P. Rule 10(b), 28 U.S. C.A. requires that the appellant, within 10 days after filing the notice of appeal, order from the reporter a transcript of the proceedings not already on file which he deems necessary for inclusion in the record and any parts of transcripts the appellant intends to include in the record. In *Herron v. Rozelle*, 480 F.2d 282 (10th Cir. 1973), this court held that if an appellant assigns error based upon alleged erroneous findings of fact by the trial court on a damage issue, such contention will not be considered where the appellant has failed to bring up a transcript of the evidence bearing upon the issue. We there declined review "since we cannot make a meaningful evaluation of the claim of error." 480 F.2d at p. 288. And in *Daiflon, Inc. v. Allied Chemical Corp.*, 534 F.2d 221, 226 (10th Cir. 1976), *cert. denied*, 429 U.S. 886, 97 S.Ct. 239, 50 L.Ed.2d 168 (1976), we said, *inter alia:* " . . . Statements of counsel in appellate briefs generally are not part of the record. *See:* e. g., *United States v. Gazda*, 499 F.2d 161 (3rd Cir. 1974). Also we may not properly consider depositions not filed in the district court in determining an appeal." 534 F.2d at pp. 226, 227. Thus, in the case at bar, we are unable, in the true adjudicatory sense, to make a meaningful evaluation of this claim of error. Nevertheless, we will endeavor to "dissect" the issue as presented in the briefs. Significantly, Appellee United States has not raised any jurisdictional challenge to this contention of error on appeal.

Hubbard inferentially asserts that Agent Paull, who was the Government's only witness before the Grand Jury, was at least somewhat less than honest when he testified in " . . . the narrative given from the point of view that Paull not only heard with clarity the conversations (via his receiver), but that he knew who was speaking to whom and, in addition, that he knew of the movements of persons from room to room (Grand Jury Testimony, pp. 5–8, 11). Yet Paull admitted that he didn't even get the gist of the conversations. (Grand Jury Testimony, pp. 9, 10.) Nowhere in Paull's Grand Jury testimony does he mention that what he is reciting is based on hearsay, or conjecture." [Brief of Appellant, p. 7.]

■ The telling aspect of Hubbard's failure to demonstrate actual prejudice as a result of Paull's testimony before the Grand Jury is his admission that "the [trial] testimony of Paull differs *somewhat* from that which he gave before the Grand Jury, although not in all instances." [Brief of Appellant, p. 4.] The record does not disclose a scintilla of proof that the Government's exclusive reliance on the testimony of Paull before the Grand Jury involved any trickery or deceit.

Hubbard relies upon *United States v. Estepa*, 471 F.2d 1132 (2nd Cir. 1972) in support of his contention that the use of hearsay evidence in a grand jury proceeding may require dismissal of the indictment upon appeal. In *Estepa*, the record established that the hearsay declarant, Policeman Twohill, did not make it clear that the matters he testified to were not from his own personal knowledge even though he spoke to the grand jurors in detail, notwithstanding his "extremely limited personal knowledge." Having noted its repeated dissatisfaction with the Government's "needless" use of hearsay in obtaining indictments, the court said, *inter alia:*

The many opinions in which we have affirmed convictions despite the Government's needless reliance on hearsay before the grand jury show how loathe we have been to open a new road for attacking convictions on grounds unrelated to the merits. We have been willing to allow ample, many doubtless think too ample, latitude in the needless use of hearsay, subject to only two provisos—*that the prosecutor does not deceive grand jurors as to "the shoddy merchandise they are getting so they can seek something better if they wish," United States v. Payton, supra,* 363 F.2d [996] at 1000 [(2d Cir.)] (dissenting opinion), or that the case does not involve "a high probability

that with eyewitness rather than hearsay testimony the grand jury would not have indicted."

\*     \*     \*     \*     \*     \*

We had hoped that, with the clear warnings we have given to prosecutors, . . . and the assurances given by United States Attorneys, see *United States v. Arcuri, supra,* 405 F.2d [691] at 693 & n. 4 [(2d Cir.)], a reversal for improper use of hearsay before the grand jury would not be required.

471 F.2d at 1137 (Citations omitted). (Footnote omitted.) (Emphasis supplied.)

Appellant, citing exclusively to *Estepa, supra,* and similar decisions from the Court of Appeals, Second Circuit, concedes, however, that there are two distinct lines of cases developed over the years on the issue whether indictments should be dismissed on the basis of hearsay testimony. [Brief of Appellant, p. 6.]

The *Estepa* court exercised its discretionary power in dismissing the indictment even though no timely motion to quash was presented before the trial court and even though the issue was presented for the first time on appeal. We have already observed that this action was apparently anchored to the court's determination that the Government had intentionally misled and/or deceived the grand jury as to the nature of the testimony. In the case at bar, there is nothing in the record (or the Brief of Appellant for that matter) which indicates that the Government misled or deceived the Grand Jury.

In *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), the Supreme Court, after tracing the historical significance of the grand jury system, stated, *inter alia:*

If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

350 U.S., at p. 363, 76 S.Ct. at p. 408.

The *Costello* holding has been reaffirmed by the Supreme Court in *Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958), *United States v. Blue,* 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966) and, more recently, in *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

This court has consistently held that an indictment returned by a legally constituted and unbiased grand jury, valid on its face, is sufficient to call for trial of the charge on the merits. *United States v. Addington,* 471 F.2d 560 (10th Cir. 1973); *United States v. Skolek,* 474 F.2d 582 (10th Cir. 1973); *United States v. Kysar,* 459 F.2d 422 (10th Cir. 1972). In *Kysar* we said, *inter alia:*

The return of an indictment by a grand jury is a conclusive determination of the issue of probable cause. If the indictment is fair upon its face and properly found and returned, the trial court cannot look behind the indictment to determine if it is based on inadequate or incompetent evidence.

459 F.2d, at p. 424.

Just as this court has relied upon the continued vitality of *Costello, supra,* in support of the rule quoted from *Kysar, supra,* so, too, have courts almost universally refused to quash indictments based upon the contention that the evidence relied upon before the grand jury was hearsay. *See: United States v. Hodge,* 496 F.2d 87 (5th Cir. 1974); *United States v. Annerino,* 495 F.2d 1159 (7th Cir. 1974); *United States v. Thompson,* 493 F.2d 305 (9th Cir. 1974), *cert. denied,* 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974); *United States v. Gaskill,* 491 F.2d 981 (8th Cir. 1974); *United States v. Zacher,*

332 F.Supp. 883 (D.C.Wis.1971); *United States v. Partin*, 320 F.Supp. 275 (D.C.La. 1970).

We have heretofore observed that the record is barren of any objection lodged by Hubbard before the trial court relative to the indictment. Thus, this contention of error is raised for the first time on appeal. In *Estepa, supra*, the court recognized the general rule that unless a defendant lodges an objection at trial, he waives the right to object for the first time on appeal unless the identifiable prejudice is so basic that it constitutes "plain error" affecting substantial rights. *See:* Fed.R.Crim.P., rule 52(b), 18 U.S.C.A.; *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Ramirez*, 524 F.2d 283 (10th Cir. 1975). As we view *Estepa*, the Court did entertain the review, notwithstanding lack of objection at the trial level, because of the *intentional deceit* found by the court of appeals to have been practiced upon the defendant by the Government. That is simply not the situation in the instant case.

This court has often applied the general rule that if an appellant fails to alert the trial court to claimed error, the issue cannot be raised for the first time on appeal unless "plain error" is held to apply. *United States v. Montgomery*, 582 F.2d 514 (10th Cir. 1978), *cert. denied*, 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42; *United States v. Guerrero*, 517 F.2d 528 (10th Cir. 1975); *United States v. Ray*, 488 F.2d 15 (10th Cir. 1973); *Fitts v. United States*, 376 F.2d 516 (10th Cir. 1967). There are basic reasons for the rule. Unless a party is required to timely object before the trial court, the trial judge and opposing counsel are deprived of any opportunity to take corrective action, if such be required, in order to assure an orderly, fair and proper trial. Further, an aggrieved party must present his objection with clarity and specificity to the trial court in order to avoid unnecessary error from occurring. In sum, a party may not sit idly by at trial watching error being committed, and complain for the first time on appeal. *Chavez v. New Mexico*, 456 F.2d 1072 (10th Cir. 1972). *See also: Johnson v. United States*, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943); *Swift v. United States*, 314 F.2d 860 (10th Cir. 1963); *Yoho v. United States*, 202 F.2d 241, 14 Alaska 174 (1953); *Metcalf v. United States*, 195 F.2d 213 (6th Cir. 1952). Furthermore, a failure to make a proper and timely objection at trial has been held to constitute a waiver. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Morland v. United States*, 193 F.2d 297 (10th Cir. 1951). We hold that such a "waiver" occurred in this case in light of the absence of a timely trial objection and "plain error." *Swift v. United States*, 314 F.2d 860 (10th Cir. 1963).

II.

Hubbard contends that the evidence presented was insufficient to support the conviction.

The same standards of review on appeal apply to both court trials and jury trials. *United States v. Marley*, 549 F.2d 561 (8th Cir. 1977). Here, of course, Hubbard knowingly and intelligently waived his right to trial by jury. He specifically moved for trial to the court. *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930); Fed.R.Crim.Proc. rule 23(a), 18 U.S.C.A.

On appeal, the entire record must be viewed in the light most favorable to the Government in order to determine whether the evidence, both direct and circumstantial, together with all reasonable inferences to be drawn therefrom, is substantial enough to establish guilt beyond a reasonable doubt. *United States v. Ireland*, 456 F.2d 74 (10th Cir. 1972); *Mares v. United States*, 409 F.2d 1083 (10th Cir. 1968), *cert. denied*, 394 U.S. 963, 89 S.Ct. 1314, 22 L.Ed.2d 564 (1969). An appellate court is bound by the rule that the resolution of conflicting evidence is within the sole discretion of the trial court or jury, whichever the case may be, as the trier of fact, and that their findings must be given added weight when the opportunity to hear and

observe the witnesses and to judge their credibility is considered. *Volis v. Puritan Life Insurance Company,* 548 F.2d 895 (10th Cir. 1977).

We hold that there is substantial evidence justifying the trial court's express findings and its conclusion that Hubbard was guilty beyond a reasonable doubt.

WE AFFIRM.