**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph J. ROGERS, Terry C. Pappageorge, Anthony M. Lorenzo,**
**Defendants-Appellants.**

**Nos. 80–1840, 80–1848 and 80–1873.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 13, 1981.

Decided July 1, 1981.

Janis E. Chapman, Asst. U. S. Atty. for D. of Colorado, Denver, Colo. (Joseph F. Dolan, U. S. Atty. for D. Colorado, Denver, Colo., with her on brief), for plaintiff-appellee.

Arthur M. Schwartz of Arthur M. Schwartz, P. C., Denver, Colo., for defendant-appellant Terry C. Pappageorge.

James M. Smith, Denver, Colo., for defendant-appellant Anthony M. Lorenzo.

Jonathan L. Olom of Marks & Olom, Denver, Colo., for defendant-appellant Joseph J. Rogers.

Before BARRETT and LOGAN, Circuit Judges, and KERR, District Judge.*

KERR, District Judge.

Defendants-Appellants Joseph J. Rogers (Rogers), Terry C. Pappageorge (Pappageorge) and Anthony M. Lorenzo (Lorenzo) were charged in a three count indictment with the unlawful transfer, receipt and possession of a firearm. Count II charged all three defendants with unlawfully transferring an unregistered .45 caliber machine gun in violation of 26 U.S.C. § 5861(e). Counts I and III charged defendants Pappageorge and Lorenzo with possession and receipt of the same firearm in violation of 26 U.S.C. § 5861(d) and § 5861(i). All counts charged aiding and abetting in violation of 18 U.S.C. § 2.

All three defendants requested a severance prior to trial, but the motions were denied by the trial court. The defendants were tried jointly and were convicted by a jury of the charges contained in the three count indictment.

* Of the United States District Court for the District of Wyoming, sitting by designation.

Upon conviction, the trial court sentenced all three defendants to various terms of imprisonment. A timely appeal to this Court followed.

The facts stand undisputed and may be summarized as follows:

On April 23, 1980, a Grand Jury was convened to investigate alleged violations of Title 26 of the United States Code by defendants. As a result of the Grand Jury investigation, the above-mentioned three count indictment was returned against defendants.

On November 28, 1979, undercover agents of the Drug Enforcement Administration met with all three defendants at a Denver restaurant. During the course of the meeting, Pappageorge asked Agent Giliotti if he would be interested in purchasing a machine gun for $1,000. Pappageorge described the gun as a .45 caliber Ingram machine gun.

Another meeting between Agents Giliotti and Lochridge and the three defendants occurred on December 4, 1979 in another restaurant. Agent Giliotti inquired about the machine gun and was told by Pappageorge that it was still for sale. Both of the above-mentioned conversations were between Agent Giliotti and Pappageorge, although all three defendants were present.

On December 6, 1979, Agents Hale, Lochridge and Giliotti met with all three defendants in an air terminal parking lot near Stapleton International Airport in Denver, Colorado. Agent Giliotti again inquired about the gun and was informed by Pappageorge that the machine gun was still available. Pappageorge also stated that he would make arrangements for the gun to be transferred to Lorenzo and Rogers. Lorenzo and Rogers would then arrange the delivery of the machine gun to Agent Giliotti.

December 7, 1979 was the date of the transfer. During the afternoon of December 7, 1979 phone contacts between Agent Giliotti and Rogers occurred. Rogers informed Agent Giliotti that Giliotti could pick the gun up at Rogers' place of business located at 1124 Cherokee Street at 7:30 that evening. All of these telephone conversations were recorded. Later in the evening, Agent Giliotti and Rogers conversed again and Rogers informed Giliotti that the transfer could not take place until 10:00 p.m. that evening instead of 7:30 p.m. as had been planned earlier.

At approximately 9:40 p.m. on December 7, 1979, surveillance officers stationed at Pappageorge's residence in Denver observed an individual getting out of a white car and entering the residence. Approximately 10 minutes later, the same individual left the house carrying something at waist level. After getting back into the white car, the individual left the vicinity.

At approximately 10:00 p.m. that same evening, Agent Giliotti was located across from 1124 Cherokee Street. The agent observed the headlights of a vehicle pull into a vacant lot next to the building. Agent Giliotti saw Lorenzo walk from the vacant lot with a box under his arm and enter 1124 Cherokee Street.

Shortly thereafter, Agents Giliotti and Lochridge entered Rogers' place of business at 1124 Cherokee Street. The two agents proceeded to the second floor where Lorenzo took them into a room. After putting gloves on, Lorenzo removed a cardboard box from the closet, opened the box and removed the machine gun. Lorenzo then gave the gun to Agent Giliotti and the agent gave Lorenzo $1,000 in cash. Rogers entered the room during the transaction and watched.

On December 18, 1979, Agents Hale and Giliotti met in a restaurant with Pappageorge, Lorenzo and other unnamed parties. Rogers was not present at the meeting. Agent Giliotti asked Pappageorge if he had received the money for the machine gun and Pappageorge informed Giliotti that he had indeed received the money.

Additional testimony established that the weapon was operable in a fully automatic mode, that it was not registered to any of the three defendants and that the machine gun did not have a serial number.

Several issues are raised by appellants in this appeal:

## I.

■ Initially, appellants raise the issue of irregularity in the Grand Jury proceedings prior to the issuance of the indictment against defendants. Specifically, appellants claim that the indictment is based strictly on hearsay and that improper comments relating to narcotics transactions were made by Agent Cochran who was the only Grand Jury witness. The Grand Jury proceedings consisted of approximately nine minutes of testimony by Agent Cochran.

Appellants' first contention has been answered by the Supreme Court. In *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), the Court phrased the question at issue in this manner: "May a defendant be required to stand trial and a conviction be sustained where only hearsay evidence was presented to the grand jury which indicted him?" The Court went on to answer the question in the affirmative:

... If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on the face, is enough to call for trial of the charge of the merits. The Fifth Amendment requires nothing more. . . .

See also *United States v. Hubbard*, 603 F.2d 137 (10th Cir. 1979); *United States v. Herbst*, 565 F.2d 638 (10th Cir. 1977). Thus, appellants' first argument is without merit. Appellants would have this Court adopt the analysis in *United States v. Estepa*, 471 F.2d 1132 (2nd Cir. 1972), requiring the dismissal of an indictment based on hearsay evidence in certain circumstances. *Costello*, supra, is still valid law and has been reaffirmed by the Supreme Court in *Lawn v.*

*United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); *United States v. Blue*, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); and in *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). There is nothing in the record to indicate that the government intentionally misled or deceived the Grand Jury. The court in *Estepa* made it clear that intentional deception was the basis for the dismissal of the indictment. Furthermore, courts have universally refused to quash indictments based on the argument that the evidence before the grand jury was hearsay. *United States v. Hubbard*, supra.

The indictment returned against defendants charged them with a firearms violation which obviously has no relationship to narcotics. Although the subject of narcotics was mentioned during Agent Cochran's appearance before the Grand Jury, the agent's testimony centered around machine guns and not narcotics. As a result, defendants received no prejudicial effect from any narcotics-related statements made by Agent Cochran.

## II.

■ Appellants second issue is that the government was required to prove scienter and strict liability. These elements are unrelated to criminal proceedings. An indictment must allege all of the essential elements of the crime charged. *United States v. Herbst*, supra. All of the requisite elements were present in the indictment. The fact that the government alleged that defendants "knowingly" were in violation of 26 U.S.C. §§ 5861(d), 5861(e), 5861(i) and 18 U.S.C. § 2 is merely surplus verbiage and is not fatal to the indictment. *Bary v. United States*, 292 F.2d 53 (10th Cir. 1961); See also *United States v. Hall*, 536 F.2d 313 (10th Cir. 1976). Furthermore, the Supreme Court has held that specific intent is not a required element under the Act. *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971).

## III.

Appellants' third issue on appeal questions whether or not the trial court erred in

denying appellants' Motions For Severance. Federal Rule of Criminal Procedure 8(b) permits two or more defendants to be charged in the same indictment. In that instant case, the charges in the indictment and the government's evidence in support of the charges, indicated that all three defendants were acting hand-in-glove in the sale of the machine gun.

As a general rule, when an indictment charges a crime involving principals and aider-abettors, those charged should be tried together. The granting of separate trials is within the discretion of the trial court. Absent a showing of prejudice and an abuse of discretion, the trial court's decision denying the motions for severance will not be disturbed. No demonstration of prejudice has been shown and no error occurred. More is required to establish abuse of discretion than to show that separate trials might have given defendants a better chance for acquittal. *United States v. Knowles*, 572 F.2d 267 (10th Cir. 1978); *United States v. Rodgers*, 419 F.2d 1315 (10th Cir. 1969). A motion for severance is properly left to the discretion of the trial judge. We hold that no abuse of discretion occurred in this case. See *United States v. Beathune*, 527 F.2d 696 (10th Cir. 1975).

### IV.

The fourth issue raised by appellants involves the question of the admissibility of statements made by co-defendants. Appellants argue that the rule set forth in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) is applicable to the facts in this case. Although admitting that *Bruton* was based on a confession of a co-defendant and not on other types of statements such as those made in the current action, appellants urge us to expand Bruton to cover any statements made by co-defendants which could be construed as confessions. This we decline to do.

We have held that even when a conspiracy is not charged, as is true in the present case, statements such as those made by the co-defendants in this case are admissible where the existence of a conspiracy has been independently established. *United States v. Cotton*, 646 F.2d 430 (10th Cir. 1981); *United States v. Durland*, 575 F.2d 1306 (10th Cir. 1978); See also *United States v. Brewer*, 630 F.2d 795 (10th Cir. 1980); *United States v. Morris*, 623 F.2d 145 (10th Cir. 1980); *United States v. Petersen*, 611 F.2d 1313 (10th Cir. 1979); *United States v. Andrews*, 585 F.2d 961 (10th Cir. 1978). After a complete and thorough review of the record, we hold that the conspiracy was independently established and the statements were admissible pursuant to Federal Rule of Evidence 801(d)(2)(E).

### V.

Defendants further argue that the trial court committed reversible error by admitting statements of co-defendants who did not take the stand. The argument is based upon the right to confrontation under the Sixth Amendment to the Constitution. Appellants' argument is misplaced. The trial court took great precaution in instructing the jury that statements made by each defendant were to be considered only as evidence applicable to the defendant making the statement and not to the other co-defendants. The trial court gave a sufficient number of cautionary instructions to the jury to make it extremely clear that the jury was to analyze the evidence in terms of what it showed regarding each individual. We hold that no error occurred.

### VI.

Appellants' sixth issue raises a question of the sufficiency of the evidence. After a complete review of the record, we hold that the clear, convincing and unrebutted evidence shows that the jury could have found the defendants guilty beyond a reasonable doubt.

### VII.

The final issue on appeal is whether or not error was committed when the trial court admitted certain tape recordings and a statement made by Pappageorge several days after the transfer of the machine gun.

< >

The alleged error urged by appellants regarding the admission of the tape recordings at trial occurred because no proper foundation was laid for the admission. After a thorough examination of the record, we are convinced that this argument is without substance. Without going into detail, the record shows ample evidence of an adequate foundation being laid for the admission of the tapes.

With regard to the latter argument that the later statement of Pappageorge was not admissible, it is obvious that the statement was admissible against Pappageorge. The statement made by Pappageorge was that he had received the money for the machine gun. As noted earlier, sufficient cautionary instructions were given to the jury by the trial court that statements of an individual defendant were admissible against that defendant only, and therefore no prejudice accrued to defendants Lorenzo and Rogers.

AFFIRMED.