UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles Patrick DILL, Robert Eugene Brown, a/k/a Sidney Ray Griffin,
Defendants-Appellants.

Nos. 82–1046, 82–1073.

United States Court of Appeals,
Tenth Circuit.

Dec. 2, 1982.

Robert N. Miller, U.S. Atty., and Patrick T. Murphy, Asst. U.S. Atty., Denver, Colo., for plaintiff-appellee.

Michael G. Katz, Federal Public Defender, and Vicki Mandell-King, Asst. Federal Public Defender, Denver, Colo., for defendants-appellants.

Before SETH, Chief Judge, and McWILLIAMS and LOGAN, Circuit Judges.

McWILLIAMS, Circuit Judge.

Three armed gunmen, all unmasked, robbed the Frontier Bank, a federally insured bank in Denver, Colorado, and escaped with approximately $30,000 in currency. Charles Patrick Dill and Robert Eugene Brown, also known as Sidney Ray Griffin, were later charged with the robbery. Specifically, both were charged with violations of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2. A jury found both defendants guilty as charged, and each was sentenced to twenty-five years imprisonment. Both defendants appeal. We affirm.

At trial, numerous bank officials identified Brown as one of the robbers. No bank official was able to positively identify Dill. However, a customer at a tire shop located next door to the bank did identify Dill as one of the persons fleeing the scene in a car which had been parked in the bank's parking lot. This witness testified that his attention was drawn to the vehicle because "red smoke was pouring out of the window" and one of the three persons in the vehicle was "hanging out the side of the car with a bag in his hand, and he was gagging for breath." The witness identified Dill as the one who was hanging out the car window.

The fact that red smoke was pouring out of the window of the car driven by the fleeing robbers is perhaps the key to the investigative solution of this bank robbery. Included in the more than $30,000 taken in the robbery was certain "dye pack" money. A "dye pack," also referred to as a "security pack," was described as a bundle of ten dollar bills, with "real" bills on both ends of the pack, but with the inner bills having their centers cut out and filled with an indelible red dye and a tear gas. This dye and gas mixture automatically detonated upon exiting from the bank.

The robbers, notwithstanding the exploding "dye pack" money, made a successful escape from the scene of the robbery. However, Dill and Brown were arrested two days later in a motel room in Waco, Texas. The circumstances leading up to such arrest constitute the primary ground urged here for reversal, namely, the search of the motel room occupied by Dill and Brown violated their Fourth Amendment rights.

An informant presented himself to the Waco police department and related his experiences of the preceding evening at the motel with Dill and Brown, whose correct names the informant did not know at that time. Without detailing all of the informant's testimony, we do note that the informant testified, at trial, that he met the two defendants in a Waco bar. The informant further testified that after closing up the bar, the defendants next stated that they wanted some drugs, and that they then drove around Waco for several hours attempting to make a purchase. During the course of the night, according to the informant, one, or both of the defendants, stated that they had pulled a bank robbery in Kansas City [1] in which they had obtained some "red" money. The informant testified that the defendants said they had given a 7–11 store operator some of the "red" money in exchange for money orders. Also, the informant testified that he obtained two of the "red" bills which he, in turn, delivered to the Waco police.

Based on the information which the informant gave the Waco police, the latter caused a search warrant to be issued by a local state judge, which warrant authorized a search of the motel rooms occupied by Dill and Brown. The search disclosed considerable "red" currency and a blue steel .357 Colt revolver. As indicated, the defendants' first ground for reversal concerns the

---

1. An F.B.I. check made by Waco police indicated that there had not been any recent bank robbery in Kansas City.

search of their motel rooms. Their argument is that the affidavit of a local Waco police officer, upon which the search warrant was based, is legally insufficient. We do not agree with this argument.

The affidavit upon which the search warrant was based was made by the Waco police officer who had interviewed the informant. He set forth therein the information which he had acquired from the informant, and recounted the steps he had taken to corroborate the information. In this latter regard, the officer, in his affidavit, stated that the informant had told him that the defendants had volunteered to the informant that they had given a local Waco convenience store some of the "red money," and that Waco police had later checked with the convenience store and verified that the store did have some "red" bills.

In addition to the affidavit of the Waco police officer, which was presented to the local judge, the police officer testified at the suppression hearing that he fully explained to the local judge the significance of "red" money in a bank robbery investigation and exhibited to the judge the "red" bills which the informant had given him.

 Under the circumstances above described, the defendants' argument that the search warrant was not based on probable cause is without merit. Probable cause for a search warrant is nothing more than a reasonable belief that the evidence sought is located at the place indicated by the policeman's affidavit. *United States v. Williams,* 605 F.2d 495 (10th Cir.), *cert. denied,* 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 189 (1979). The affidavit, coupled with the explanatory statement made to the issuing judge by the affiant concerning the significance of "red" currency in a bank robbery

investigation, is amply sufficient to justify the issuance of a warrant to search Dill's and Brown's motel rooms. The affidavit provided sufficient information to enable the magistrate to make an independent determination regarding the informant's credibility and the reliability of the information. *Aguilar ·v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Additionally, the magistrate may consider other facts and circumstances which corroborate the informant's tip. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). See also, *United States v. Sporleder,* 635 F.2d 809 (10th Cir.1980). In short, the record made at the suppression hearing discloses quite clearly that there was no violation of any Fourth Amendment right of either defendant. ·

 Prior to and during the trial, motions to sever, made by both Dill and Brown, were denied. Such ruling is now assigned as error. We do not agree. When two or more persons commit a criminal act and are later jointly indicted, they can generally expect to be tried together.[2] The fact that the prosecution may have a stronger case against one defendant than against a co-defendant does not entitle the latter to a separate trial. *United States v. Anderson,* 626 F.2d 1358 (8th Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981); *United States v. Williams,* 604 F.2d 1102 (8th Cir.1979); *United States v. Fuel,* 583 F.2d 978 (8th Cir.1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979). Nor does the mere fact that two defendants may have inconsistent defenses necessarily entitle one to a separate trial. *United States v. Calabrese,* 645 F.2d 1379 (10th Cir.), *cert. denied,* 451 U.S.

---

**2.** Fed.R.Crim.P. 8(b). To justify severance, the moving party must show that he will be prejudiced by the joinder. Fed.R.Crim.P. 14; *United States v. Rogers,* 652 F.2d 972 (10th Cir.1981). In determining the merits of a motion to sever, the trial court must weigh the prejudice caused by the joinder against considerations of economy and expedition in judicial administration. *United States v. Walton,* 552 F.2d 1354 (10th Cir.), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977). The defendant bears a

heavy burden of showing real prejudice to his case. *United States v. Parnell,* 581 F.2d 1374 (10th Cir.1978), *cert. denied,* 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1979). The decision of whether to grant a motion for severance rests in the sound discretion of the trial court. *Rogers, supra; Parnell, supra.* A decision to deny separate trials will not be disturbed on appeal absent an abuse of discretion. *United States v. Eaton,* 485 F.2d 102 (10th Cir.1973).

1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981); *United States v. Roberts,* 583 F.2d 1173 (10th Cir.1978), *cert. denied,* 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 49 (1979); *United States v. Johnson,* 478 F.2d 1129 (5th Cir. 1973). We are not here faced with a *Bruton* situation, since neither Dill nor Brown made any confession or admission against his interest. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Whether the defendants are to be tried jointly, or separately, is a matter addressed to the sound discretion of a trial judge and, in the instant case, the trial judge did not abuse such discretion.

 After about ten government witnesses had identified Brown as being one of the robbers, Brown informed his retained counsel that he (Brown) was probably under the influence of drugs at the time of the robbery. Counsel brought the matter to the attention of the court and requested that he be allowed to present the defenses set forth in Fed.R.Crim.P. 12.2(a) and (b). The trial court denied this request on the ground that such was not timely made, as required by Rule 12.2(a) and (b), and that good cause had not been shown which might excuse such untimeliness. We find no error in such ruling. In this general regard, Brown's counsel advised the trial court that, by way of preparation for trial, he had questioned Brown concerning the possibility of raising mental capacity as a defense, and that Brown indicated no interest in such a defense. Further, it was known to all by the time of the suppression hearing, if not before, that Brown, Dill, and the informant were in search of drugs on the night preceding the arrest. So, the fact that Brown was no stranger to drugs could not have been a newly discovered fact. Under all these circumstances, the trial court did not err in refusing Brown's request that his part of the trial be terminated, and that he be allowed to start afresh and raise the defenses contemplated by Fed.R.Crim.P. 12.2(a) and (b).

As an offshoot of the foregoing, appellate counsel, who did not represent Brown at trial, asserts that Brown did not receive the effective assistance of counsel in his trial. Suffice it to say, there is nothing in the present record to support such assertion.

Dill, but not Brown, contends that there is insufficient evidence to support the jury's verdict against him. Such contention minimizes the identification by the witness who observed Dill in the escape vehicle, hanging out of the window, gagging and holding a bag, with red smoke pouring out of the car. Counsel claims that such identification testimony was at variance with the testimony of another government witness. Whether such is true, and, if so, which witness was in a better position to observe, and later recall, is for the jury. In any event, the testimony of the informant, which is corroborated by a wealth of circumstantial evidence, such as the finding of "red" money in Dill's motel room in Waco, is itself sufficient to sustain the verdict. Indeed, in a very literal sense, Dill and Brown were caught red-handed.

Judgments affirmed.