940 F.2d 1539
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jean R. CANON, Defendant-Appellant.
 No. 90-2157.
 United States Court of Appeals, Tenth Circuit.
 Aug. 16, 1991.
 
 Before JOHN P. MOORE and McWILLIAMS, Circuit Judges, and KANE, District Judge.*
 ORDER AND JUDGMENT**
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Jean R. Canon appeals from his conviction for willfully making and using false statements on income tax forms and knowingly making and presenting a false refund claim. The false statements consisted of fictitious reports of compensation paid by Mr. Canon to other persons, and the false refund claim was for $29 million based upon those fictitious reports. He raises four issues on appeal. He contends he was denied his right to counsel at trial; that he did not knowingly and intelligently waive his right to trial by jury; that he was improperly denied the opportunity to subpoena witnesses; and that the combination of the previous errors deprived him of his right to a fair trial. We find no error and affirm.
 
 
 2
 The issues presented in this case stem from Mr. Canon's quixotic notion that the Sixth Amendment limits the criminal jurisdiction of federal courts to either "The Common Law" or "the Criminal Aspects of the Admiralty Jurisdiction." R.1, tab. 8. From this absurdly distorted view, Mr. Canon, who insisted on representing himself, argued persistently the district court had no "jurisdiction" over him or the charged offenses. Nothing the trial court said to Mr. Canon persuaded him that his notion of "jurisdiction" was fatally skewed.[1]
 
 
 3
 Now represented by counsel, who had been assigned by the trial court as a standby legal adviser at trial, Mr. Canon takes the position that the district court denied him his Sixth Amendment right to counsel. The argument is predicated upon the contention that the judge failed to determine Mr. Canon had an understanding of the hazards of self-representation. United States v. Padilla, 819 F.2d 952, 956 (10th Cir.1987). Counsel admits the judge found Mr. Canon competent, but contends he failed to find Mr. Canon's waiver of counsel knowing and intelligent. Under the circumstances present here, counsel argues the court should have forced counsel upon Mr. Canon. We disagree.
 
 
 4
 To put the issue in context, we must first review the facts. The limited record before us contains only part of the pretrial dialogue between Mr. Canon and the court over the issue of counsel. Appended to the government's brief, we have also a partial transcript of Mr. Canon's arraignment before a magistrate judge. It is glaringly patent from these records that Mr. Canon was unalterably fixed upon the notion he had a right to represent himself and he was not going to accept appointed counsel.
 
 
 5
 Before the magistrate, Mr. Canon refused to respond to questions designed to disclose his understanding and competence until the judge produced "an injured party before this court." Taking the position that his education and knowledge of the rules of procedure and evidence were "private information" which he did not have to disclose until an "injured party complainant" was produced, Mr. Canon obstructed the magistrate's efforts to determine whether the defendant could represent himself.
 
 
 6
 When the district judge later attempted to delve into that question, Mr. Canon responded by demanding to know whether the court was exercising its "common law" or "admiralty" jurisdiction, claiming without this knowledge he was unable to "prepare a defense." In evident exasperation after many attempts to communicate with Mr. Canon, the trial judge stated: "Well, you can just accept it on face value, that I have jurisdiction." To which Mr. Canon replied, "I can't accept it sir. It has to be one or the other."
 
 
 7
 Finally, after jousting over whether the judge or the defendant was to control the course of events, Mr. Canon protested his "rights" were violated by the trial court's unwillingness to hear an "order to show cause" filed by Mr. Canon. The trial judge then reiterated Mr. Canon "should avail [him]self of counsel," prompting Mr. Canon to ask, "Are you trying to force me to have a licensed attorney, sir?" When the court replied it was not, Mr. Canon responded:
 
 
 8
 MR. CANON: Well, it's going to be in common law, sir, too.
 
 
 9
 THE COURT: And that's your privilege.
 
 
 10
 MR. CANON: No, it's a right.
 
 
 11
 THE COURT: You may be seated.
 
 
 12
 MR. CANON: Under the constitution.
 
 
 13
 It is true, as counsel suggests, at no time did the trial court make an independent, specific finding that Mr. Canon was aware of the hazards of self-representation as required by Padilla. It is equally evident, however, Mr. Canon knew he had the constitutional right to act as his own counsel, was unwilling to accept appointment of counsel, looked upon such appointment as a transgression of his right of self-representation, and was unwilling to accept any advice given by the court. By now contending the trial judge nevertheless should have forced counsel upon him to protect his Sixth Amendment right, Mr. Canon asks too much.
 
 
 14
 Counsel argues to us that Mr. Canon had "difficulty in understanding[ ] the proceedings." Indeed, Mr. Canon's perception of the law and his bizarre notions of criminal jurisprudence are plain in the record. Nonetheless, his difficulty was not in understanding the proceedings or perceiving his right to counsel and his right to self-representation. His difficulty was in convincing the court that his skewed notions of the law were correct and that he should be granted a forum from which to advocate those views. Moreover, it is evident from the record Mr. Canon tied any desire for counsel to having someone who would advocate his misconceived legal theories.[2]
 
 
 15
 With the benefit and confidence of hindsight, one might now say the trial court could have taken another approach to convince Mr. Canon that his notion of jurisdiction was wrong. Perhaps, if Mr. Canon had been convinced of his error, he might have accepted appointment of counsel, but that is rank speculation. We must judge the actions of the trial court in their context, and by doing so, we conclude he acted properly and within the bounds of reason. The defendant managed to maneuver the trial judge into a situation in which nothing he did would be correct. Had the court forced counsel upon the defendant, we would now be faced with an argument over the constitutionality of that act. There comes a time, therefore, when even a pro se defendant must be made to endure the consequences of his own knowing and voluntary strategy.
 
 
 16
 Mr. Canon was convinced the court was without jurisdiction to try him. He refused to accept the court's ruling to the contrary and chose to follow the dictates of his own mistaken theory. Nothing contained within the Sixth Amendment requires a trial judge to force-feed intelligence to an adamant pro se defendant, and we will not impose such a duty in this case.
 
 
 17
 Mr. Canon submitted a written "Notice and Objection" to the court refusing a trial by jury. Such an objection ordinarily indicates a knowing and intelligent waiver. See United States v. Hubbard, 603 F.2d 137, 142 (10th Cir.1979). Defendant's notice stated:
 
 
 18
 Jean R. Canon objects to having a trial by jury, and Jean R. Canon did not authorize anyone to move in his behalf for trial by jury. If there is a trial it will be by Judge only.
 
 
 19
 R.I, tab. 8 (emphasis in original). The district judge also held a hearing on the jury trial issue at which he told Mr. Canon:
 
 
 20
 Now, a trial is a very complicated process. However, it is your right to object to a trial by jury if that's your wish. And I just want to make sure that you understand what you're doing by communicating this to the Court, because you are entitled to a jury trial.
 
 
 21
 And there is a benefit to a jury trial because you--a jury of twelve people must all of them unanimously be convinced of your guilt before you can be convicted. And it's a right given to you by the constitution. But, of course, you can waive that right, but I want you to understand that what you're doing, if indeed that is your desire, not to be tried by a jury.
 
 
 22
 R. II, 4. Mr. Canon responded that the case was based on a question of law and therefore a jury could not hear it. The court explained:
 
 
 23
 Well, the thing is, Mr. Canon, if that's the only reason you're waiving a jury trial, that's not necessary, because I will deal with all the questions of law and the jury will only act as a fact-finder.
 
 
 24
 R. II, 5. Despite this explanation, Mr. Canon insisted he did not want to be tried by a jury. He cannot now be heard to complain his waiver was neither knowing nor voluntary.[3]
 
 
 25
 Mr. Canon asserts his Sixth Amendment right to compulsory process was violated when the trial court decided not to issue subpoenas for the witnesses listed by the defendant. Fed.R.Crim.P. 17(b), in part, provides the court shall issue subpoenas without cost "upon a satisfactory showing ... that the presence of the witness is necessary to an adequate defense." We review the court's decision for abuse of discretion. United States v. Greschner, 802 F.2d 373, 378 (10th Cir.1986), cert. denied, 480 U.S. 908 (1987). The defendant's list of witnesses included judges, magistrates, United States attorneys, IRS employees, and members of the grand jury. To determine the necessity of these witnesses, the court asked standby counsel to have Mr. Canon tell the court in confidence "what he expected the witnesses to testify to and the respective addresses." Mr. Canon refused, and the court denied the request. This ruling was not an abuse of the court's discretion.
 
 
 26
 While the right to compel the attendance of witnesses by subpoena is a constitutional fixture, the question of whether such subpoenas shall issue without cost to the accused is restricted by Rule 17(b). Given the identity of the witnesses, the trial court did not act beyond its discretionary authority by requiring Mr. Canon to state the subject matter of their proposed testimony so that the court could decide whether it was relevant to an adequate defense. Mr. Canon's non sequitur prior representations to the court made the inquiry particularly appropriate in this case.[4]
 
 
 27
 Given our resolution of the foregoing issues, we conclude defendant's assertion of a due process violation based upon the accumulation of those claims is groundless. We, therefore, decline to consider it further.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The Honorable John L. Kane, Jr., United States District Court Judge for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The record does not indicate the court informed Mr. Canon of the provisions of 18 U.S.C. Sec. 3231, but neither does it indicate Mr. Canon would have been convinced by the stark language of that statute. Given the Supreme Court held in 1812 that there are no federal common law crimes, United States v. Hudson & Goodwin, 7 Cranch 32 (1812), it is easy to understand why the district court had such difficulty attempting to comprehend the "issue of law" Mr. Canon was bent upon pursuing
 
 
 [2]
 Counsel argues, in effect, that Mr. Canon claimed in a letter to the trial court that it was denying him the right "to obtain counsel of his choice." That claim however, was in the context that the magistrate refused
 to provide the taxpayer identification number and the date of birth on [sic] the persons making claims against Jean R. Canon to prevent a pattern of racketeering and corrupt organization from occurring in that courtroom that day, and in that so called criminal case, has made it impossible for Jean R. Canon to defend himself; to obtain counsel of his choice; ...
 R. I, tab. 8 (emphasis in original). So far as the statement is understandable, we perceive it to mean the magistrate's refusal to respond to his requests for irrelevant material was the cause of the so-called deprivation of his rights.
 
 
 [3]
 Mr. Canon also argues the government did not consent as required by Fed.R.Crim.P. 23(a). That argument is specious. Government's counsel in open court expressed his awareness of Rule 23(a) and raised only the possibility the trial court might want to recuse because of the judge's connection with another case. In the context of the record, the government's failure to object to trial by the court constitutes consent
 
 
 [4]
 Even at this juncture, counsel fails to tell us what these witnesses would have testified to that would have been necessary to the defense. Given the evidence presented by the government in its case, the suggestion that any of the proffered witnesses would have presented testimony bearing on the charges stretches credulity