**UNITED STATES of America,**
**Plaintiff,**

v.

**Thomas E. MOWER, Leslie D. Mower,**
**James Thompson, Defendants.**

**No. 2:02 CR 787 DAK.**

United States District Court,
D. Utah,
Central Division.

Jan. 10, 2005.

Kevin M. Downing, Esq., Department of Justice, Washington, DC, for Plaintiff.

Robert S. Campbell, Jr., Loren E. Weiss, Van Cott Bagley Cornwall & McCarthy, Salt Lake City, Joseph H. Tibodeau, Joseph H. Tibodeau PC, Denver, CO, Neil A. Kaplan, Anneli R. Smith, Clyde Snow Sessions & Swenson, Salt Lake City, for Defendants.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on all pending motions filed by the Defendants: Thomas Mower and Leslie Mower's Joint Objection to Admission of Co–Conspirator Statements Under F.R.E. 801(d)(2)(e) and Request for James Hearing; Thomas Mower and Leslie D. Mower's Motion in Limine to Exclude Co–Defendant's Statements; Thomas E. Mower's Objection to

Government's Introduction of Evidence under F.R.E. 404(b); Leslie D. Mower's Objection to Government's Notice of Intent to Introduce Evidence under F.R.E. 404(b); James Thompson's Response/Objection to Government's Notice of Intent to Introduce Evidence Under F.R.E. 404(b); and James Thompson's Motion to Sever Defendant's Trial from Co–Defendants. A hearing on the motions was held on November 30, 2004. At the hearing, the United States was represented by Caryn D. Mark and Ed Power, Defendant Thomas Mower was represented by Max D. Wheeler and Rebecca Hyde, Defendant Leslie D. Mower was represented by Neil A. Kaplan, and Defendant James Thompson was represented by Scott Williams. The court held a *James* hearing, heard arguments from counsel, and took the motions under advisement. The court has considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. Thomas Mower and Leslie Mower's Joint Objection to Admission of Co–Conspirator Statements Under F.R.E. 801(d)(2)(e) and Request for James Hearing

The government filed a notice of intent to introduce several co-conspirator statements under FRE 801(D)(2)(E). The only two items Defendants object to are (1) a letter from Allen Davis to IRS Special Agent Ted Elder dated October 31, 1997 and (2) an Affidavit of Allen Davis filed in a separate civil case in the U.S. District Court for the District of Utah on January 9, 1998, stating that MP Trust received no distributorship income and that no checks had been negotiated in the name of MP Trust. The parties agreed to have a *James* hearing. At the *James* hearing, the government called I.R.S. Special Agent Ted Elder.[1]

Under FRE 801(d)(2)(E), statements that would otherwise be hearsay are admissible for the truth if made by a co-conspirator during the course of and in furtherance of a conspiracy. Before admitting out-of-court statements under FRE 801(d)(2)(E) the court must determine by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made in the course of and in furtherance of the conspiracy. *United States v. Owens,* 70 F.3d 1118, 1123 (10th Cir.1995), *cert. denied,* 525 U.S. 883, 119 S.Ct. 193, 142 L.Ed.2d 158 (1998). The government bears the burden of establishing the admissibility of out-of-court statements by co-conspirators. *Id.*

To prove that a conspiracy existed, the government must establish: "1) that two or more persons agreed to violate the law, 2) that the defendant knew at least the essential objectives of the conspiracy, 3) that the defendant knowingly and voluntarily became a part of it, and 4) that the alleged coconspirators were interdependent." *United States v. Evans,* 970 F.2d 663, 668 (10th Cir.1992). The court will consider the Allen Davis' letter and affidavit separately.

### A. Davis' October 31, 1997 Letter to Elder

The Mowers argue that Allen Davis wrote the letter as a part of his position at

---

1. At the hearing Defendant made an oral motion to strike the testimony of Special Agent Elder. However, Elder testified as to his knowledge of the events and the court finds no basis for striking his testimony. Defendants also objected to the admissibility of exhibits 8 through 14. However, the court finds the exhibits admissible for purposes of the *James* hearing.

Neways and his mere association with them as Neways' corporate counsel is insufficient to establish that he was a part of a conspiracy to evade tax obligations. They assert that the government must prove that Allen Davis agreed to violate the law, that he knew at least the essential objectives of the conspiracy, that he knowingly and voluntarily became a part of the conspiracy, and that the alleged co-conspirators were interdependent. *United States v. Angulo–Lopez,* 7 F.3d 1506, 1510 (10th Cir.1993).

This court already ruled that a tax fraud conspiracy existed for purposes of a *James* hearing, when it ruled that "the grand jury testimony of Allen Davis ... establishes, by a preponderance of the evidence, the existence of a tax fraud conspiracy." With respect to the October 31, 1997 letter, the Mowers have presented no new evidence or rational as to why the court's previous finding is no longer valid.

In March 1997, Allen Davis and James Thompson knowingly created a false and fraudulent loan document which was given to IRS Special Agent Elder in an attempt to conceal $650,000 in commission income received from Neways Australia. The loan document showed a loan between Neways Australia and the Mower Family Trust. Purportedly, the proceeds of this loan had been used to purchase property known as Hobble Creek. On March 31, 1997, IRS Special Agent Ted Elder interviewed Thomas Mower in the presence of Allen Davis and James Thompson. During this interview, Elder questioned Mower about the purchase of Hobble Creek and Mower stated that he borrowed money from Neways Australia to purchase the property. Elder requested the documentation of the loan. Allen Davis and James Thompson left the room, created the documentation, and James Thompson returned and presented Elder with a loan agreement. On October 31, 1997 Davis sent Elder the letter stating that Elder would find no documentation of the purported loan at Neways Australia and advised that Neways Australia had mistakenly failed to report the loan.

During his grand jury testimony, Davis admitted that the letter was essentially entirely false and was written in an effort to keep Elder from traveling to Australia. Davis admitted in his grand jury testimony that he and the defendants in this action committed fraud when they passed the false loan document to Elder during the March 1997 meeting. He testified that he knew the loan document was phony when it was created. He also admitted that based on conversations with Neways Australia's CFO and prior to sending the October 31 letter to Elder that he had concluded that the money used to purchase Hobble Creek was the Mowers' commission income from Australia. Furthermore, he testified that the only true purpose for the October 31, 1997 letter was to prevent Elder from discovering the falsity of the loan documents and to conceal the true nature of the Mower's commission income. Furthermore, he testified that he communicated with Leslie Mower as to all of these matters. Therefore, the court concludes that with respect to the October 31, 1997 letter, the government has presented sufficient evidence that a conspiracy existed, Davis and the defendants were members of the conspiracy, and the letter was sent in the course of and in furtherance of the conspiracy. *See United States v. Owens,* 70 F.3d 1118, 1123 (10th Cir.1995), *cert. denied,* 525 U.S. 883, 119 S.Ct. 193, 142 L.Ed.2d 158 (1998).

### B. Davis' January 9, 1998 Affidavit

The Mowers argue that the affidavit filed in the civil lawsuit regarding M.P. Trust was not directed to a government agency and, therefore, not in furtherance

of the conspiracy. Even if the affidavit furthered the conspiracy in some way, the Mowers argue that Davis unintentionally advanced some object of the conspiracy and was not a co-conspirator. *United States v. Russell,* 109 F.3d 1503, 1514 (10th Cir.1997).

The government asserts that the Affidavit filed by Davis stated that the MP Trust received no income. Davis testified that Thompson had informed him that MP Trust received no income or commission checks. Had Thompson, a co-conspirator, told Davis that MP Trust was the Mower's distributorship, Davis would have had to file an affidavit that revealed additional reported income. Instead, the Mowers and Thompson used Davis to continue the conspiracy by concealing the Mower's interest in MP Trust.

■ In his grand jury testimony, Davis stated that he received the information for the affidavit from a Neways bookkeeper and did not learn until after it was filed that the information was not correct. Although the government claims that Davis was already a participant in the conspiracy because of other acts he had performed, there is no evidence that he submitted his Affidavit to further the conspiracy. Even the government acknowledges that Davis had no knowledge of its falsity at the time he filed the affidavit. Therefore, even if it advanced some aim of the conspiracy, the court finds that the government has not established that Davis filed the Affidavit in furtherance of the conspiracy. Accordingly, the court concludes the Affidavit is not admissible under FRE 801(d)(2)(E).

The government also argues that the Affidavit of Allen Davis is admissible non-hearsay even if it is not a co-conspirator statement because the government does not intend to introduce it to prove the truth of its assertions. It is unclear to the court what context the government could be intending to use the Affidavit in which the truth of its assertions were not relevant. The court concludes that the affidavit is inadmissible.

## II. Joint Motion in Limine to Exclude Co–Defendant's Statements

The parties have resolved this motion on their own. The government has agreed not to offer any of the statements by James Thompson at issue in this motion unless James Thompson testifies. Therefore, the motion is moot.

## III. Defendants' Objections to Government's Introduction of Evidence Under F.R.E. 404(b).

### A. Thomas and Leslie D. Mower

The government provided notice that it intends to introduce the following evidence with respect to Thomas E. Mower:

1. Evidence that Thomas E. Mower held himself out as a P.h.D.

2. Evidence concerning false affidavits concerning Thomas Mower's marital status which defendant Thomas Mower presented to foreign jurisdictions; and

3. Evidence of false statements and representations made by Thomas Mower during the Lorie Nelson civil lawsuit.

The government also provided notice that it intends to offer the following evidence against Leslie D. Mower:

1. Evidence that Leslie D. Mower held herself out as a former employee of the Salt Lake City Police Department; and

2. Evidence of false statements made by Leslie D. Mower during the Lorie Nelson civil lawsuit.

■ However, the government concedes that the evidence regarding Thomas Mower holding himself out as a P.h.D. and submitting false affidavits regarding his marital status to foreign jurisdictions, and Leslie D. Mower holding herself out to be a former employer of the Salt Lake Police

Department, will only be used as impeachment if Mower places his credibility or reputation for truthfulness at issue during the trial. Impeachment is a permissible "other purpose" under Rule 404(b). *United States v. Olivo*, 69 F.3d 1057, 1065 (10th Cir.1995).

■ With respect to both of the Mowers' statements made during their 1997 depositions in the Lorie Nelson case regarding MP Trust, the government asserts such statements are inextricably intertwined with the fraud crime charged. Rule 404(b) only applies to evidence that is extrinsic to the crime charged. *United States v. Nichols*, 374 F.3d 959, 966 (10th Cir.2004). If the other act and the evidence of the crime charged are inextricably intertwined or both acts were part of a single criminal episode or the other acts were necessary preliminaries to the crime charged, then they are not extrinsic. *Id.*

■ However, the Mowers' statements are not inextricably intertwined to the charges in this case because virtually all of the MP Trust income was reported and no tax liability exists for 1997 domestic income. The court recognizes that the Indictment in this case alleges that the Mowers failed to report significant amounts of MP Trust income on their personal tax returns. However, the timing of the deposition and the income alleged to be misreported are not related. Moreover, even if this court were to find the representations sufficiently tied to this case, in balancing the probative value versus the prejudicial effect, the court cannot conclude that the evidence would be proper to admit. The parties would be required to re-litigate the allegations and representations made in the Nelson case. Not only does this diminish the probative value of the statements, it may potentially confuse the jury. Therefore, the court concludes that the representations made by the Mowers in the Nelson case are inadmissible.

## B. James Thompson

The government intends to offer evidence against Thompson as to the facts surrounding Thompson's criminal State tax evasion conviction. Thompson argues that the notice is not specific enough as to what facts would be offered. The government provided Thompson with a box consisting of two transcripts of testimony and fourteen video and cassette recordings related to the trial. Thompson also argues that it may be presumed that any such evidence would be more prejudicial than probative under Rule 403.

At the hearing, the government conceded that it will only use this evidence against James Thompson as impeachment if Thompson testifies and that it is only entitled to evidence admissible under Rule 609 of the Federal Rules of Evidence. Therefore, the court deems this concession adequate to resolve Thompson's objections.

## IV. Thompson's Motion to Sever Defendant's Trial From Co–Defendants

Thompson requests a severance arguing that joinder of the defendants was improper in that they did not "participate in the same act or transaction or in the same series of acts or transactions constituting an offense" and trying him together with the Mowers would prejudice his confrontation rights. Thompson also argues that trying him with the Mowers would confuse the issues for the jury and tend to incriminate him by mere association with the Mowers, who are charged with a vastly greater conspiracy.

Rule 8 of the Federal Rules of Criminal Procedure is broadly construed to allow liberal joinder to enhance the efficiency of the judicial system. However, under Rule 14 of the Federal Rules of Criminal Procedure, "if it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an

indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

The First Superseding Indictment charges all defendants with conspiracy to commit tax evasion, charges Thomas and Leslie Mower with attempted tax evasion, and James Thompson with obstructing the administration of the IRS. Thomas and Leslie Mower are the co-founders and co-owners of Neways companies in several countries, and James Thomas was corporate counsel for Neways.

█ The Tenth Circuit follows the general rule that individuals charged together should be tried together. *United States v. Wright*, 932 F.2d 868, 876 (10th Cir.), *cert. denied*, 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991). "A defendant wishing to obtain severance must show actual prejudice at trial will result from failure to sever the trials." *United States v. Sanders*, 929 F.2d 1466, 1469 (10th Cir.), *cert. denied*, 502 U.S. 846, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991). Moreover, in a conspiracy trial where the "evidence overlaps and the offenses arise from the same series of acts or transactions," joinder is favored. *United States v. Scott*, 37 F.3d 1564, 1579 (10th Cir.1994), *cert. denied*, 513 U.S. 1100, 115 S.Ct. 773, 130 L.Ed.2d 669 (1995).

█ Thompson fails to show the requisite prejudice arising from a joint trial with the Mowers. Because the indictment alleges that Thompson was involved in the conspiracy with the Mowers, joinder is proper. Even if his involvement was on a smaller scale than the Mowers, there is no reason to believe that a jury cannot comprehend each party's role.

The government has stated that it will not introduce, or knowingly cause a situation whereby the co-defendants could introduce evidence against Thompson that would be inadmissible if he was tried individually. The government no longer seeks to introduce statements by Thompson under FRE 801(d)(2)(E). When the government introduces Thompson's statements for their truth, it will introduce them as admissions and not as co-conspirator statements.

█ Furthermore, a joint trial will not violate Thompson's Sixth Amendment rights. In *Bruton*, the court dealt with a co-defendant's "confession" not statements. *United States v. Hill*, 901 F.2d 880, 883 (10th Cir.1990); *United States v. Rogers*, 652 F.2d 972, 976 (10th Cir.1981)(noting arguments in favor of extending the rule's application to co-defendant's statements have been rejected). The Tenth Circuit has referred to *Bruton* as a narrow rule. Where an admission implicates a co-defendant, the appropriate remedy is limiting instructions to the jury that statements made by each defendant are to be considered only as evidence applicable to the defendant making the statement and not to the other co-defendants. *Rogers*, 652 F.2d at 976. The government has no such confessions to introduce.

In addition, there is no merit to the argument that defenses in this case are likely to be "mutually inconsistent." Mutually antagonistic defenses are not prejudicial per se. *Zafiro v. United States*, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). The Tenth Circuit rejected this theory when it held that "under no circumstances can it be said that a defendant's attorney is obligated to comment upon a codefendant's failure to testify." *United States v. McClure*, 734 F.2d 484, 491 (1984). A defendant, just like the govern-

ment, shall not comment on another defendant's invocation of the right to remain silent. Therefore, the court concludes that Thompson has not demonstrated that his joinder is prejudicial. Accordingly, his motion for severance is denied.

## CONCLUSION

Based on the above reasoning, Thomas Mower and Leslie Mower's Joint Objection to Admission of Co–Conspirator Statements Under F.R.E. 801(d)(2)(e) and Request for James Hearing is GRANTED IN PART AND DENIED IN PART as discussed above; Thomas Mower and Leslie D. Mower's Motion in Limine to Exclude Co–Defendant's Statements is MOOT; Thomas E. Mower's Objection to Government's Introduction of Evidence under F.R.E. 404(b) is GRANTED IN PART AND DENIED IN PART as discussed above; Leslie D. Mower's Objection to Government's Notice of Intent to Introduce Evidence under F.R.E. 404(b) is GRANTED IN PART AND DENIED IN PART as discussed above; James Thompson's Response/Objection to Government's Notice of Intent to Introduce Evidence Under F.R.E. 404(b) is GRANTED IN PART AND DENIED IN PART as discussed above; and James Thompson's Motion to Sever Defendant's Trial from Co–Defendants is DENIED.