*This opinion is subject to revision before final publication in the Pacific Reporter*

**2025 UT 60**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellant,*

*v.*

KAIN BLACKWING,
*Appellee.*

No. 20230752
Heard May 13, 2025
Filed November 28, 2025

On Appeal of Interlocutory Order

Third District Court, West Jordan
The Honorable A. Chelsea Koch
No. 171400665

Attorneys:

Derek E. Brown, Att'y Gen., Christopher A. Bates, Spec. Asst. Solic. Gen., Salt Lake City for appellant

Trevor J. Lee, Park City, for appellee

JUSTICE HAGEN authored the opinion of the Court in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN, and JUSTICE POHLMAN joined.

JUSTICE HAGEN, opinion of the Court:

### INTRODUCTION

¶1 Defendant Kain Blackwing stands charged of orchestrating the attempted murder of fourteen-year-old C.G. to prevent her from testifying that he raped her. From his jail cell where he awaited trial on the rape charge, Blackwing allegedly directed three women with whom he had a polygamous relationship to murder C.G. and her parents in their home. The plan

ultimately failed, and the State charged Blackwing with solicitation, conspiracy, and attempted murder.

¶2   The State filed a notice of intent to introduce various categories of evidence that it characterized as "intrinsic," meaning evidence that "would be considered part of the case narrative and have important probative value that bears directly on the crime charged." *State v. Lucero*, 2014 UT 15, ¶ 14 n.7, 328 P.3d 841, *abrogated on other grounds by State v. Thornton*, 2017 UT 9, 391 P.3d 1016. Relevant to this appeal, the State sought to offer the details of the rape case involving C.G., Blackwing's prior conviction for raping one of his alleged co-conspirators, and his relationship with all three women, including alleged instances of manipulation, coercion, and control. Blackwing moved in limine to exclude the evidence. The district court granted Blackwing's motion in part excluding most of the proposed evidence under rules 401, 402, 403, and 404(b) of the Utah Rules of Evidence.

¶3   We granted the State's petition for interlocutory review. We affirm the district court's exclusion of Blackwing's prior rape conviction under rule 403. But we hold that the district court exceeded its discretion in excluding the other proposed evidence. In doing so, we adopt the rule that evidence of acts that are intrinsic to a charged crime do not constitute "other act" evidence within the meaning of rule 404(b). Because the case involving C.G. and Blackwing's relationship with his alleged co-conspirators are both directly related to the conspiracy and solicitation charges, the evidence was not subject to 404(b). And, given the probative value of this evidence, we conclude that the court exceeded its discretion in excluding the evidence as either irrelevant under rules 401 and 402 or unduly prejudicial under rule 403. We affirm the court's exclusion of the prior rape conviction but reverse its remaining rulings and remand the case for trial or other further proceedings.

## BACKGROUND[1]

¶4   Kain Blackwing lived in a polygamous relationship with Raven Blackwing and Theresa Baker, whom he met when both

---

[1] We recite the version of events from relevant case documents and for background purposes only. We emphasize that all descriptions of Blackwing's behavior are unproven allegations and that he is presumed innocent. *See State v. Jolley*, 2025 UT 9, n.1, 568

(continued . . .)

women were minors. Blackwing maintained a patriarchal role in the household. He made all major decisions, instructed Raven and Theresa on his spiritual theories, and required them to follow his rules. He also instructed them to address him as "My Lord" and told them that, if they disobeyed his rules, they "would be punished and possibly killed."

¶5    In 2013, Blackwing met Tina,[2] who was also a minor at the time. He introduced her to his home and began mentoring her in his spiritual theories and the rules of his house. With Blackwing's encouragement, Tina moved in with him, Raven, and Theresa. Like the other women in the household, Tina was subject to Blackwing's rules and breaking those rules involved punishment and "required a process of apology and restitution to him." Blackwing repeatedly warned Tina he had "killed thousands of . . . people."

¶6    In 2017, Blackwing was convicted by a jury of multiple counts of rape and other sexual offenses perpetrated against Tina in March and April 2014. In that case, the State established absence of consent due to Blackwing's enticement, coercion, and manipulation of a relationship of special trust with Tina. Evidence presented in the case also showed that Blackwing used similarly coercive and manipulative tactics on Raven and Theresa.

¶7    Around the same time Blackwing committed the sex offenses against Tina, he also sexually assaulted C.G., a fourteen-year-old relative who had stayed overnight at his home. C.G. reported the sexual assault to her parents, who then informed law enforcement. In July 2014, Blackwing was arrested and charged—in a separate case from the one involving Tina—with a single count of rape against C.G. and was held in custody awaiting trial. Blackwing ultimately pleaded guilty to one count of forcible sexual abuse in the case involving C.G.

¶8    The events of the present case occurred while Blackwing was charged with the rape of C.G. and detained pretrial. While in jail, Blackwing allegedly solicited and conspired with Raven, Theresa, and Tina to murder C.G. and her parents. Blackwing

---

P.3d 1040; *see also* UTAH CODE § 76-1-501(1) ("A defendant in a criminal proceeding is presumed to be innocent until each element of the offense charged against him is proved beyond a reasonable doubt.").

    [2] A pseudonym.

discussed the plan with the women during jail visiting hours and over the phone, using coded language derived from video games. According to Tina's preliminary hearing testimony, Blackwing wanted C.G. and her parents dead to prevent C.G. from testifying against him. Without C.G.'s testimony, Blackwing believed that he would avoid conviction and be able to leave the United States.

¶9     Blackwing directed the women to break into C.G.'s home, suffocate her using plastic wrap and chloroform, incapacitate her parents by injecting them with heroin, and set the house on fire. After receiving Blackwing's instructions, the women began procuring the necessary supplies and prepared to carry out Blackwing's plan. In September 2014, Theresa stayed behind at home while Raven and Tina broke into C.G.'s home wearing dark clothing, ski masks, and gloves. But a family friend staying at the home caught the women going down the stairs after breaking in. After an altercation, another resident of the home called the police, leading to Raven and Tina's arrest. Among other things, the women were carrying syringes, a knife, a Taser, and matches.

¶10   Based on these events, in February 2017, the State charged Blackwing with three counts of solicitation for aggravated murder, one count of conspiracy to commit aggravated murder, and one count of attempted aggravated murder. The State later filed a notice of intent to introduce prior crimes evidence pursuant to Utah Rule of Evidence 404(b). Relevant to this appeal, the State sought to introduce evidence of the following: (1) Blackwing's sexual assault of C.G.; (2) Blackwing's conviction for the rape of Tina; and (3) Blackwing's relationship with Raven, Theresa, and Tina, including his past manipulation and coercion. In response, Blackwing filed a motion in limine to exclude the evidence, arguing that it was extrinsic to the charges and constituted inadmissible character evidence under rule 404(b), or, alternatively, that the evidence was unfairly prejudicial under rule 403.

¶11   In a written order the district court granted the motion in part and denied it in part. The court started with evidence of the case involving C.G. The court held that this evidence was "intrinsic to the charges in the instant case" because "[w]hile they are not part of the same criminal episode, the fact that there was a pending case with C.G. as the witness i[s] inextricably intertwined." Since the court found the evidence to be intrinsic, it ruled that rule 404(b) did not apply. Instead, the court excluded the evidence as irrelevant under rules 401 and 402 and unduly prejudicial under rule 403. The

court limited the State to introducing evidence that Blackwing was charged with a crime and C.G. was the sole witness.

¶12  Next, the court excluded all evidence from the prior case in which Blackwing was convicted of raping Tina. The State sought to introduce that evidence to show that "Blackwing had a long term history of sexual, psychological and emotional manipulation of [Tina]." The court determined that the details of that case were not intrinsic to the present case and that rule 404(b) applied. The court explained that Blackwing's "prior rape conviction[] against . . . [Tina] is [not] relevant to whether or not he solicited her to commit murder or conspired with her to commit murder" nor is it "relevant to what the State must prove at trial." The court then concluded that the evidence was not offered for a non-character purpose and therefore must be excluded. In a footnote, the court noted that the evidence would also be subject to exclusion under rule 403.

¶13  Lastly the court ruled on evidence of Blackwing's past manipulation, coercion, and command of Raven, Theresa, and Tina. The State argued that "Blackwing's alleged long-term manipulation of the women . . . is direct evidence of his soliciting, requesting, and commanding them to commit murders, and that the nature of their relationship is relevant to the formation of a conspiracy." The court explained that "[t]his evidence supports both proper and improper inferences." On the one hand, "the dynamics of the relationship between the parties . . . may be offered for a proper, non-propensity purpose." But on the other hand, the State was, in the court's view, seeking to introduce the evidence to show that "Blackwing has a propensity for coercing, commanding, and manipulating these women, and he did so again in this case." Because the evidence supported both proper and improper inferences, the court proceeded to a rule 403 analysis to weigh the tendency of the evidence to sustain a proper inference against its propensity to be misused for an improper purpose.

¶14  The court concluded that evidence of Blackwing's acts of manipulation, coercion, and control must be excluded under rule 403. It ruled that the "*general* nature and dynamics of the relationship" would not garner an improper inference from the jury at trial. But specific details of Blackwing's manipulation and control, such as "cult-like bad acts," punishing the women for disobeying, making death threats, and requiring the women to call him "My Lord," had "little to no probative value in the instant case." The court explained that the State did not need to show that

Blackwing manipulated the women to prove the elements of the offense, only that he solicited them. The court determined that the manipulation and control evidence was "unduly prejudicial" and would "likely confuse or mislead the jury." It therefore concluded that "specific bad acts regarding the relationship between the women and Blackwing" were inadmissible under rule 403.

¶15 We subsequently granted the State's petition for interlocutory review of the district court's order.

## ISSUE AND STANDARD OF REVIEW

¶16 The State challenges the district court's exclusion of evidence. We review a district court's evidentiary rulings for abuse of discretion. *See State v. Ring*, 2018 UT 19, ¶ 17, 424 P.3d 845. When a district court applies the correct legal standard, its decision "to admit or exclude evidence is only an abuse of discretion if it is beyond the limits of reasonability." *Id.* (cleaned up). But a district court abuses its discretion when it admits or excludes evidence under the wrong legal standard. *State v. Cuttler*, 2015 UT 95, ¶ 12, 367 P.3d 981. And "whether the district court applied the proper legal standard in assessing the admissibility of evidence is a question of law that we review for correctness." *State v. Green*, 2023 UT 10, ¶ 43, 532 P.3d 930 (cleaned up).

## ANALYSIS

¶17 At Blackwing's upcoming trial, the State wants to offer evidence of his alleged conduct leading up to the charged offenses. Under our rules, all relevant evidence is admissible unless a constitutional provision, statute, or rule provides otherwise. *See* UTAH R. EVID. 402. But the Utah Rules of Evidence limit the State's ability to introduce evidence of other acts a defendant may have committed. "Evidence of prior bad acts must clear several evidentiary hurdles before admission—rules 404(b), 402, and 403." *State v. Green*, 2023 UT 10, ¶ 63, 532 P.3d 930 (cleaned up).

¶18 The primary rule at issue here, rule 404(b), provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." UTAH R. EVID. 404(b)(1). But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2).

¶19 If the evidence is offered for a proper purpose under rule 404(b), the court must next determine whether the evidence is relevant. Under rule 402, the evidence must be relevant to be admissible, and relevance "is defined in rule 401 as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Green*, 2023 UT 10, ¶ 63 (cleaned up).

¶20 Finally, if the court concludes that the evidence is relevant, it must determine whether the evidence is admissible under rule 403. To be admissible under that rule, the court must find that the evidence "does not pose a danger for unfair prejudice that substantially outweighs its probative value." *Id.* ¶ 64 (cleaned up).

¶21 We address each category of evidence in the order addressed by the district court: (1) evidence of the case involving C.G.; (2) evidence of the crimes against Tina; and (3) evidence of Blackwing's relationship with the co-conspirators. In our discussion of the first category of evidence, we clarify the governing standard for each of the rules applicable to other acts evidence—rules 404(b), 402, and 403. *See id.* ¶ 63. We then apply those clarified standards throughout our opinion.

I. EVIDENCE OF THE CASE INVOLVING C.G.

¶22 In its written order on Blackwing's motion in limine, the district court first addressed the evidence regarding the case against Blackwing for raping C.G. The court determined that the evidence was "intrinsic to the charges in the instant case" and therefore not subject to rule 404(b). The court then assessed its relevance under rules 401 and 402 and whether the risk of prejudice substantially outweighed its probative value under rule 403. The court ruled that evidence that C.G. was the sole witness in a criminal case against Blackwing was admissible, but that all other evidence regarding the case must be excluded for lack of relevance under rules 401 and 402 and undue prejudice under rule 403. We address each rule separately and conclude that the district court exceeded its discretion in excluding the evidence.

A. *Rule 404(b) and Intrinsic Evidence*

¶23 Blackwing urges us to affirm the district court's ruling on the alternative ground that the crime committed against C.G. is inadmissible other act evidence under rule 404(b). The district court did not conduct a rule 404(b) analysis because it determined that

the evidence fell outside the scope of the rule. Specifically, the court ruled that "[e]vidence of the case involving C.G. is intrinsic to the charges in the instant case." Because "Blackwing is alleged to have conspired to kill and solicited to kill a witness in a criminal proceeding," the court reasoned that the current charges "would not make sense without some information about the other case." Those facts, it continued, are "necessary preliminaries" to the charged conduct. (Quoting *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993).)

¶24 The distinction between intrinsic and extrinsic evidence was first acknowledged by this court in a footnote. *State v. Lucero*, 2014 UT 15, ¶ 14 n.7, 328 P.3d 841 (cleaned up), *abrogated on other grounds by State v. Thornton*, 2017 UT 9, 391 P.3d 1016. In *Lucero*, the State had argued, as an alternative basis for affirmance, that the challenged evidence was "part of the continuing narrative rather than an independent act." *Id.* In recounting that argument, we stated,

> Since rule 404(b) applies only "to evidence that is *extrinsic* to the crime charged," *United States v. Mower*, 351 F. Supp. 2d 1225, 1230 (D. Utah 2005) (emphasis added), this would preclude applicability of the rule altogether. This is because rule 404(b) applies only to "other" acts—if the evidence of prior acts is "inextricably intertwined" with the crime that is charged, or if both the charged crime and the prior act are considered "part of a single criminal episode," then rule 404(b) would not apply. *Id.* Rather, the act would be considered part of the case narrative and have important probative value that bears directly on the crime charged.

*Id.* But we concluded, "This is not the case here." *Id.*

¶25 Indeed, each time the State has argued that evidence is intrinsic, this court has relied instead on a traditional 404(b) analysis to uphold the admission of challenged evidence. *See, e.g.*, *State v. Andrus*, 2025 UT 32, ¶ 87, 575 P.3d 1071 (upholding the admission of evidence for a proper purpose under rule 404(b) after "[a]ssuming without deciding that the evidence was extrinsic"); *State v. Allen*, 2005 UT 11, ¶ 15, 108 P.3d 730 (declining to reach whether evidence was "admissible as 'intrinsic evidence' under a federal analysis because we conclude[d] that it was admissible under a traditional Utah Rule of Evidence 404(b) analysis"). But the

court of appeals has squarely held that "[e]vidence forming such an 'integral part of the charged conduct' is 'beyond the reach of rule 404(b).'" *State v. Sorenson*, 2023 UT App 159, ¶ 14, 542 P.3d 529 (quoting *State v. Hood*, 2018 UT App 236, ¶¶ 32–33, 438 P.3d 54); *see also State v. Main*, 2021 UT App 81, ¶ 19, 494 P.3d 1056.

¶26 Blackwing characterizes the distinction between intrinsic and extrinsic evidence as "the intrinsic exception" to rule 404(b). He argues that the intrinsic exception is a reincarnation of the English common law doctrine of res gestae, which functioned as an exception to the general common law prohibition against the "use of character or propensity evidence to establish a defendant's guilt." In his view, the intrinsic exception improperly "exempts from Rule 404(b) scrutiny any 'evidence [that] is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury.'" (Quoting *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009).) He urges us to follow the path of other courts that have distanced themselves from the intrinsic exception. *See, e.g.*, *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010).

¶27 If we adopt the distinction, Blackwing urges us to define it narrowly. He contends that the "inextricably intertwined" standard for intrinsic evidence is "vague and unintelligible" and that "'quite simply, no one knows what it means.'" (Quoting *Green*, 617 F.3d at 246.) He asks us to "strictly cabin its application to the historical uses of admitting (1) evidence that is necessary to prove the charged offense, and (2) uncharged acts performed contemporaneously with the charged crime that facilitate the commission of the charged crime."

¶28 We decline Blackwing's invitation to reject the distinction between intrinsic and extrinsic evidence. And we disagree with Blackwing's characterization of it as a judicially created exception to rule 404(b). Rather, it is a text-based application of the rule that, by its own terms, applies to "other acts," not to acts directly connected to the factual circumstances of the crime.

¶29 Rule 404(b) prohibits evidence of "a crime, wrong, or other act" when introduced "to prove a person's character" in order to show that "on a particular occasion the person acted in conformity with the character." UTAH R. EVID. 404(b)(1). Rule 404(b) does not apply to evidence of the crime charged, because such evidence does not implicate a person's purported propensity to act in conformance with the character exhibited by the evidence. Instead,

rule 404(b) applies to crimes, wrongs, or other acts separate from the charged offenses. *Lucero*, 2014 UT 15, ¶ 14 n.7.

¶30 The difficulty lies in articulating a workable standard for distinguishing between facts that are part of the charged crimes that are not subject to rule 404(b) and other acts that are. We noted in *Lucero* that intrinsic evidence is generally "considered part of the case narrative and ha[s] important probative value that bears directly on the crime charged." *Id.* The Tenth Circuit has defined intrinsic evidence as that which is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." *Parker*, 553 F.3d at 1314 (cleaned up). "Extrinsic evidence, on the other hand, is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." *Id.* (cleaned up).

¶31 We agree with these articulations of the standard and adopt them. Evidence is intrinsic and thus outside the scope of rule 404(b) when there is a direct relationship between the act and the charged crime.[3] To be considered intrinsic, the acts must be an "integral and natural part of the . . . circumstances surrounding the offense for which the defendant" is charged, *United States v. Irving*, 665 F.3d 1184, 1213 (10th Cir. 2011) (cleaned up), or "directly connected to the factual circumstances of the crime," *Parker*, 553 F.3d at 1314 (cleaned up). This definition does not include acts that are "only tangentially related to the charged crime" and are merely used to "complete the story" or "explain the circumstances." *United States v. Bowie*, 232 F.3d 923, 928 (D.C. Cir. 2000) (quoted in *State v. Thornton*, 2014 UT App 265, ¶ 43 n.10, 339 P.3d 112, *aff'd in part*, *rev'd in part*, 2017 UT 9, 391 P.3d 1016).

¶32 We decline to adopt Blackwing's proposed definition of intrinsic evidence because it is too narrow. He would limit intrinsic evidence to that which "is necessary to prove the charged offense." That framing would invite courts to scrutinize whether it would be possible to prove an element of the offense without the evidence,

---

[3] We find the "inextricably intertwined" language quoted in *State v. Lucero* to be unhelpful. 2014 UT 15, ¶ 14 n.7, 328 P.3d 841, *abrogated on other grounds by State v. Thornton*, 2017 UT 9, 391 P.3d 1016. We would expect any relevant evidence to be "intertwined" with the charged crimes and very little evidence is truly "inextricable" in the sense that it cannot be excluded from other admissible evidence.

subjecting all but the most essential act necessary to complete the crime to a 404(b) analysis.

¶33 We also reject his suggestion to limit intrinsic evidence to acts that occur contemporaneously with the charged crime. *See, e.g.*, *Green*, 617 F.3d at 249 (limiting the use of intrinsic evidence to "acts performed contemporaneously with the charged crime" (cleaned up)); *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011) (same); *Rojas v. People*, 504 P.3d 296, 308 (Colo. 2022) (en banc) (same). Conduct that directly facilitates or otherwise plays an integral role in an offense often occurs before the crime is completed. Similarly, intrinsic evidence can arise from conduct that occurs after the crime is completed. *See State v. Von Niederhausern*, 2018 UT App 149, ¶ 21 n.6, 427 P.3d 1277 (noting that courts have allowed the use of "other crimes, wrongs, or acts" evidence where "those acts occurred after the charged conduct"); *see also Main*, 2021 UT App 81, ¶¶ 18–24 (holding that evidence that the defendant, who murdered his father, later assaulted and kidnapped a friend was intrinsic evidence admissible in the murder trial to explain why inculpatory evidence from the murder was found at the friend's house).

¶34 Under the definition of intrinsic evidence we adopt today, the district court correctly ruled that Blackwing's sexual assault of C.G. was intrinsic and not subject to rule 404(b). Blackwing was charged with solicitation and conspiring to murder C.G. because she was a witness in the sexual assault case against him. There is a direct relationship between the sexual assault and the crimes for which Blackwing is on trial. The alleged sexual assault of C.G. led to Blackwing's arrest. While detained pending trial, he allegedly hatched the scheme to murder C.G. and her parents to escape punishment. According to the State, he then solicited the women in his household to carry out the killings and reached the agreement giving rise to the conspiracy charges. There is a direct relationship between the sexual assault of C.G. and the charged crimes. Because the sexual assault played a direct role in the commission of the crimes on trial, the district court properly concluded that the evidence was intrinsic and not subject to rule 404(b).

### B. Rule 402

¶35 The district court ruled that evidence regarding "the specifics of C.G.'s case, including the facts or specific allegations, charges and outcome, are not relevant to elements the State must prove in the instant case." The State sought to introduce "specifics of the case involving C.G." because, it argued, "the sexual abuse of

C.G. was the very reason for the conspiracy charge in the instant case."[4] The court disagreed and ruled that only the "fact that C.G. was the sole witness in a criminal case against Blackwing [would be] admissible at trial."

¶36 In making this ruling, the court applied the wrong legal standard by raising the relevance bar too high. Rule 402 provides that relevant evidence is admissible unless another constitutional provision, statute, or rule provides otherwise. *See* UTAH R. EVID. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Id.* R. 401. The bar for relevance "is very low, and even evidence with the slightest probative value is relevant." *State v. Martin*, 2002 UT 34, ¶ 34, 44 P.3d 805 (cleaned up).

¶37 To meet that low bar, evidence need not directly prove or disprove the fact of consequence, so long as it has "any tendency to make [the] fact more or less probable than it would be without the evidence." UTAH R. EVID. 401. This means that only a "logical connection between the evidence and th[e] fact of consequence" is required, and that "connection to an element need not be direct, so long as it exists." 2 CLIFFORD S. FISHMAN & ANNE TOOMEY MCKENNA, JONES ON EVIDENCE § 11.3, Westlaw (database updated Dec. 2024). In other words, evidence can be "a step on one evidentiary route to the ultimate fact." *Old Chief v. United States*, 519 U.S. 172, 179 (1997).

¶38 The district court excluded the details of the case involving C.G. because those details were "not relevant to [the] elements the State must prove in the instant case." But relevant evidence is not limited to disputed facts that bear on the elements of a claim or

---

[4] On appeal, Blackwing contends that the State failed to preserve its legal theory of relevance. Blackwing contends that the State argued below that "the sexual abuse of C.G. was the very reason for the conspiracy," but now on appeal, the State argues that "the more serious the charges Blackwing was facing," the "length[ier the] sentence" and thus "the stronger his motive to silence her." We do not view this as a new issue, but as further development of the theory of admissibility presented to the district court. *See Gressman v. State*, 2013 UT 63, ¶ 45, 323 P.3d 998 ("Issues must be preserved, not arguments for or against a particular ruling on an issue raised below." (cleaned up)).

defense. *See United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) (explaining that "the trial court may admit evidence that does not directly establish an element of the offense charged" (cleaned up)). Rather, "some evidence that is merely ancillary to evidence that bears directly on the issues may be admissible." 1 KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE § 185.1, Westlaw (Robert P. Mosteller ed., database updated Feb. 2025) [hereinafter MCCORMICK ON EVIDENCE]. The "evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *Gonzalez*, 110 F.3d at 941. For instance, evidence can be relevant for purposes such as providing logical coherence to the events of the case, demonstrating the credibility of a witness, or helping the jury understand evidence that will be offered at a later phase of trial. *See United States v. Boros*, 668 F.3d 901, 908 (7th Cir. 2012) (explaining that evidence is relevant if "its exclusion would leave a chronological and conceptual void in the story" (cleaned up)).

¶39 The ability to offer evidence beyond what is strictly necessary to prove the case is not a special privilege afforded only to the prosecution. Any party is entitled to offer more than sanitized evidence that proves the elements of a claim or defense. Parties are entitled to offer evidence "that merely fill[s] in the background of the narrative and give[s] it interest, color, and lifelikeness." MCCORMICK ON EVIDENCE § 185.1. Likewise, rule 401's low threshold grants courts leeway to admit evidence—subject to other evidentiary rules—that presents the case in a logically coherent manner to the factfinder. Evidence can have "force beyond any linear scheme of reasoning" and can have a narrative impact "not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict." *Old Chief*, 519 U.S. at 187.

¶40 An application of rule 402 that worked otherwise would present practical difficulties to the party that bears the burden of proof on an issue at trial. *See id.* at 188 ("If jurors' expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party." (cleaned up)). It would also encroach on the jury's fact-finding role. The jury makes factual determinations based on the entirety of the evidence presented, not on isolated items of evidence that are presented in a vacuum. As the Supreme Court explained, "the evidentiary account of what a defendant has thought and done can accomplish

what no set of abstract statements ever could, not just to prove a fact but to establish its human significance, and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment." *Id.* at 187–88.

¶41 Under the correct legal standard, evidence of Blackwing's sexual assault of C.G. and the resulting charges is relevant because those facts precipitated the alleged solicitation and conspiracy to commit aggravated murder in this case. Under the State's theory, Blackwing solicited and conspired with Raven, Theresa, and Tina to murder C.G. to prevent her from testifying against him. Limiting the State's evidence to the mere fact that Blackwing was charged with a crime to which C.G. was the sole witness would rob the jury of critical context needed to assess the State's theory. The seriousness of the underlying crime matters, as does the nature of Blackwing's crime and C.G.'s role as the alleged victim. If Blackwing had been charged with shoplifting, for instance, and C.G. was a bystander who happened to be the only witness to the theft, a jury would rightly question Blackwing's motive to commit murder. But evidence that Blackwing was facing trial for raping a fourteen-year-old relative makes it more plausible that Blackwing was willing to take such extreme measures to silence her.

¶42 Other details surrounding the underlying crime may also prove relevant to the State's theory of how the solicitation and conspiracy played out. For instance, Blackwing initially directed Raven, Theresa, and Tina to only murder C.G., but later the plan evolved to include C.G.'s parents. The State contends that the parents' involvement in the case—including their decision to report Blackwing to law enforcement—is relevant to "explain Blackwing's decision to go after [C.G.'s] parents." We agree. Excluding the evidence would leave a chronological or conceptual void in the story and impair the jury's ability to assess the logical force of the State's evidence. *See Boros*, 668 F.3d at 908. Details allow the jury to use their common sense when evaluating whether the State has met its burden of proof. Such evidence is not inadmissible simply because the State could prove each element of the offenses without it.

¶43 By excluding all evidence of the case involving C.G. other than the fact that she was the sole witness to a crime allegedly perpetrated by Blackwing, the district court raised the relevance bar well above its low threshold. In doing so, the district court applied the wrong legal standard. And because it applied the

wrong legal standard, it exceeded its discretion by excluding the evidence under rule 402. *See State v. Cuttler*, 2015 UT 95, ¶ 12, 367 P.3d 981.

### C. Rule 403

¶44 The district court also ruled, in the alternative, that the evidence must be excluded under rule 403. The court reasoned "that any probative value of [the fact that C.G.'s case was a sex crime] or the details of the sex crime, is substantially outweighed by the danger of unfair prejudice" because this "type of underlying crime has little to no probative value in the instant case." The court explained that "evidence of a sex crime involving a child is highly inflammatory, and admitting such evidence has an undue tendency to suggest decision on an improper or emotional basis." (Citing *State v. Jaimez*, 817 P.2d 822, 825 (Utah Ct. App. 1991).)

¶45 Under Utah Rule of Evidence 403, a district court may exclude otherwise relevant admissible evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Rule 403 is a balancing test, where the district court considers the probative value of the evidence, against its potential for unfair prejudice. At the outset, the court must "indulge a presumption in favor of admissibility." *Green*, 2023 UT 10, ¶ 78 (cleaned up). "The probative value of evidence is judged by the strength of the evidence and its ability to make the existence of a consequential fact either more or less probable and the proponent's need for the evidence." *State v. Johnson*, 784 P.2d 1135, 1140 (Utah 1989) (cleaned up).

¶46 In performing the weighing required by rule 403, the district court undervalued the probative value of the evidence and overstated the risk of prejudice. As to the evidence's probative value, the court's misunderstanding of the legal standard for relevance infected its assessment of the probative value under rule 403. The court ruled that the "type of underlying crime" in the case involving C.G. had "little to no probative value in the instant case" because the "specific allegations, charges and outcome, are not relevant to elements the State must prove in the instant case." But as we explained above, relevant evidence is not limited to evidence that directly proves the elements of the crime.

¶47 With that understanding, the probative value of the evidence becomes apparent. The underlying criminal case involving C.G. allegedly motivated Blackwing to plan C.G.'s murder, a plan from which his current charges arise. Under the

State's theory of the case, the nature of the crime in C.G.'s case was critical to explain Blackwing's motivation. We agree with the State that the jury's ability to assess the strength of the State's case would be impaired if it could not hear evidence about the factual context in which the events underlying the charged offenses occurred. That context is what gives the State's evidence its logical force and explains why the crimes might have unfolded the way the State contends. Both the severity and the nature of the underlying rape are highly probative to the jury's assessment of the case.

¶48 Under rule 403, relevant evidence is presumed to be admissible. *See Green*, 2023 UT 10, ¶ 78; *see also* UTAH R. EVID. 402. Thus, a trial court must be careful not to treat all prejudicial evidence as excludable under rule 403, because "all effective evidence is prejudicial in the sense of being damaging to the party against whom it is offered." *State v. Killpack*, 2008 UT 49, ¶ 53, 191 P.3d 17 (cleaned up). Rule 403 allows exclusion only where, as relevant here, the evidence poses a risk of "unfair prejudice" to the opposing party. *Id.* (cleaned up). Unfairly prejudicial evidence is evidence that has a "tendency to influence the outcome of the trial by improper means, or if it appeals to the jury's sympathies, or arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions of the case." *Olympus Hills Shopping Ctr., Ltd. v. Smith's Food & Drug Ctrs., Inc.*, 889 P.2d 445, 455 (Utah Ct. App. 1994) (cleaned up).

¶49 Importantly, relevant evidence may be excluded under rule 403 only "if its probative value is *substantially outweighed*" by the risk of unfair prejudice. UTAH R. EVID. 403 (emphasis added). When "evidence is prejudicial but is at least as probative it is properly admissible." *State v. Alinas*, 2007 UT 83, ¶ 36, 171 P.3d 1046 (cleaned up). And, "even if the evidence has the potential for prejudicing a defendant, it will be admitted if it has unusual probative value." *State v. Kell*, 2002 UT 106, ¶ 31, 61 P.3d 1019. Even "minimally probative evidence need not always be excluded" unless its probative value "is substantially outweighed by the danger of unfair prejudice." *Johnson*, 784 P.2d at 1141 (cleaned up).

¶50 Here, the district court reasoned that the evidence should be excluded under rule 403 because "evidence of a sex crime involving a child is highly inflammatory, and admitting such evidence has an undue tendency to suggest decision on an improper or emotional basis." This reasoning overlooks the role of

16

the sex crime in the charged offenses. Evidence that a defendant committed a sex crime against a minor always poses some risk of inflaming the jury. But when a defendant is on trial for that very crime, such evidence suggests a decision on a *proper* basis. *See* UTAH R. EVID. 404(c); *Cuttler*, 2015 UT 95, ¶¶ 26–27. The probative value of the evidence makes it highly prejudicial; indeed, the defendant would not be convicted without it. But it is not unfair prejudice.

¶51 This case is one step removed from that scenario, but it is not a very long step. Under the State's theory of the case, Blackwing's alleged sexual assault of C.G. led to his prosecution for that crime which in turn led to his effort to escape accountability by having her killed. Although Blackwing is not on trial for the alleged sexual assault, the facts of this case are rooted in that underlying crime. And the factual circumstances that allegedly gave rise to the crime charged are highly probative to reaching a decision on a proper basis.[5]

¶52 The district court exceeded its discretion in categorically excluding nearly all evidence regarding the nature of the underlying crime. Still, there may be details of the sexual assault case that would be needlessly gratuitous so that the risk of inflaming the jury substantially outweighs the probative value. The State has indicated that it does not seek to admit a "blow-by-blow" account of Blackwing's alleged crimes against C.G., just the "basic facts." On remand, the district court may still need to decide whether particular pieces of evidence warrant exclusion under rule 403 on a piece-by-piece basis in response to specific objections. But the district court's blanket exclusion of any evidence of the underlying case beyond the fact that Blackwing was charged with a crime to which C.G. was the only witness was an abuse of discretion based on a misunderstanding of rule 403.

II. EVIDENCE OF CRIMES AGAINST TINA

¶53 The State also challenges the exclusion of evidence regarding Blackwing's relationship with co-conspirators Raven,

---

[5] Evidence that the defendant allegedly committed an uncharged act also poses a risk of suggesting a conviction on an improper basis, but courts can mitigate that risk by instructing the jury that the defendant is on trial only for the charged crimes and cannot be convicted "simply because [jurors] believe [the defendant] may have committed some other act(s) at another time." *See* MODEL UTAH JURY INSTRUCTIONS 2d CR411.

Theresa, and Tina. The State filed notice of its intent to introduce two categories of evidence. First, it sought to admit the details of a case in which Blackwing was convicted of rape and other crimes against Tina under a theory of enticement and coercion. Second, the State sought to admit evidence of Blackwing's relationship with Raven, Theresa, and Tina. The State argued that "evidence relating to the dominance that [Blackwing] exercised over the women residing with him will bear directly on his ability to command these same women to kill for his benefit."

¶54 The district court and the parties have addressed the case involving Tina separately from the relationship between Blackwing and all three women. But we view the conduct that gave rise to the case involving Tina simply as additional evidence of Blackwing's relationship with her. We will address the evidence of Blackwing's treatment of Tina together with the other relationship evidence in the next section.

¶55 But the State seeks to introduce evidence that goes beyond Blackwing's conduct. It also wishes to introduce Blackwing's conviction for the crimes against Tina. The district court excluded that evidence. Specifically, it ruled that "[t]he fact that Blackwing has been convicted of rape charges where [Tina] was the victim is not intrinsically intertwined with the" charges in this case, and is "not offered for a proper, non-propensity purpose." It noted that the evidence would also be subject to exclusion under rule 403 because "few things are more prejudicial to a defendant than the admission of multiple recent rape convictions."

¶56 We affirm the court's ruling excluding the conviction under rule 403. We agree with the State that evidence that Blackwing enticed and coerced Tina to engage in sexual acts while she was a minor demonstrates the nature of the relationship and the degree of control he exercised over her. For the reasons set forth in the following section, that evidence is intrinsic to the charged offenses and highly probative. But the fact that Blackwing was charged with and convicted of those acts carries no independent probative value. It shows only that another factfinder credited that evidence. The jury that will be empaneled in this case can weigh the evidence and assess credibility for itself. Evidence of a conviction would encourage the jury to abdicate its fact-finding responsibility and would be overly prejudicial. *See Robinson v. Taylor*, 2015 UT 69, ¶¶ 32–33, 356 P.3d 1230 (discussing risk that the jury may use the conviction against the defendant for improper

purposes). Therefore, we affirm the district court's exclusion of Blackwing's conviction for the crimes against Tina.

## III. EVIDENCE OF RELATIONSHIP WITH CO-CONSPIRATORS

¶57 The State next challenges the district court's ruling excluding evidence of Blackwing's "specific, controlling and unusual, cult-like bad acts including specifics of the alleged manipulation and coercion, such as punishment for disobeying, death threats and requiring the women to call him 'Lord.'" The State argues that the district court erred in treating the evidence as extrinsic to the charged offenses and in finding that the probative value of the evidence was substantially outweighed by the risk of unfair prejudice. We agree with the State on both points.

### A. Rule 404(b)

¶58 Unlike the evidence of the case involving C.G., the district court could not "find that the specific evidence of the women and Blackwing's relationship is so 'inextricably intertwined' with the charged crimes that it falls outside the scope of rule 404(b)." (Quoting *State v. Hood*, 2018 UT App 236, ¶ 31, 438 P.3d 54.) The court then went on to apply rule 404(b). It found that the evidence was offered for both a proper purpose—"explaining the dynamics of the relationship between the parties"—and an impermissible propensity purpose—showing that "Blackwing has a propensity for coercing, commanding and manipulating these women, and he did so again in this case." Having found that the evidence supports both proper and improper inferences, the court went on to assess the relevance of the evidence and to conduct a rule 403 balancing analysis.

¶59 The State asserts that the district court erred by applying rule 404(b) at all. In the State's view, Blackwing's long-term manipulation of his co-conspirators is not "other act" evidence that falls within the scope of the rule but is intrinsic to the charged crimes of conspiracy and solicitation to commit murder. We agree.

¶60 The State argues that Blackwing's sexual assault of Tina is intrinsic because it shows that Blackwing "systematically enticed and coerced Tina into joining a household where he had authority over all important decisions and enforced his will through threats and fear." This in turn helps explain "how he was able to convince Tina . . . to do something . . . most people would flatly refuse." Additionally, the State argues that the evidence of Blackwing's history of manipulation and control of all three women "explains

how the parties came to know each other, the nature of their relationship, and why Blackwing would feel comfortable asking them to commit a serious crime."

¶61 Blackwing's alleged acts of manipulation, control, and dominance over the women are directly connected to the alleged solicitation and conspiracy. Those acts are not tangentially related but directly contributed to his ability to carry out the alleged crimes.

¶62 Evidence of Blackwing's coercion and control of the women is part and parcel of proving that there was indeed a conspiracy. To prove conspiracy, the State must prove, among other things, that Blackwing "agree[d] with one or more persons to engage in or cause the performance" of the crime. UTAH CODE § 76-4-201. The State intends to prove that the required agreement was formed as a result of the relationship between the parties. According to the State's theory, Blackwing trusted the women to follow his instructions because he had trained them to do so by punishing them if they did not follow his commands and threatening further punishment, including death. *Cf. United States v. Robles-Alvarez*, 874 F.3d 46, 51 (1st Cir. 2017) (holding that evidence of prior drug smuggling trip was intrinsic to a conspiracy charge because it explained why the defendant "would have trusted the pair and decided to go into business with them"). Those alleged facts also explain why the women would have entered into an agreement to carry out the crime. The State intends to show that by the time Blackwing hatched the murder plot from jail, the women were already conditioned to do anything to please him.

¶63 The relationship is also key to the solicitation charge. To prove solicitation, the State must show Blackwing "solicit[ed], request[ed], command[ed], offer[ed] to hire, or importune[d] another person" to commit the crime. UTAH CODE § 76-4-203(1) (2014).[6] As with the conspiracy charge, the State intends to prove that Blackwing selected the women for the assignment because they were already within his control. The district court rejected that argument, reasoning that it did not matter whether the women "were easily manipulated by Blackwing" because "the women could have been complete strangers, and if he solicited them to

---

[6] The legislature has recently made changes to the criminal solicitation provision of Utah's criminal code. We cite the version in effect at the time of the alleged crime.

commit a murder, he would still be guilty." While Blackwing could have solicited strangers to commit the murders, he did not. He instead allegedly commanded three women under his sway to commit the murders on his behalf. The State seeks to prove that he had the power to do so because he brought the women into his household, trained them to follow his commands and call him Lord, and punished them when they disobeyed. The evidence of Blackwing's alleged dominance over the women shows why he selected them, issued an edict in coded language, trusted them to remain silent, and knew that they would carry out his plan. Such evidence is intrinsic to the crime charged.

¶64 In addition, the unusual degree of control Blackwing exercised over the women is highly probative of his role in the alleged crime. Blackwing was in jail when the women attempted to carry out the murder plot, which might raise a reasonable doubt about whether Blackwing was involved or whether the women acted alone. The State bears the heavy burden of proof at trial and is entitled to anticipate and proactively disprove the theory that the women acted on their own initiative. *See id.* § 76-4-203(2) (2017) ("An actor may be convicted [of solicitation] only if the solicitation is made under circumstances strongly corroborative of the actor's intent that the offense be committed."). Evidence that Blackwing controlled every aspect of their lives tends to prove that the women would not have planned the murder and broken into the victim's home absent Blackwing's express direction.

¶65 In finding that the evidence was extrinsic and fell within rule 404(b), the district court relied on a court of appeals decision that is factually distinguishable. In *State v. Hood*, the court of appeals determined that evidence of a defendant's prior excommunication from The Church of Jesus Christ of Latter-day Saints was not intrinsic to the defendant's charges of rape and sodomy. *See* 2018 UT App 236, ¶ 32, 438 P.3d 54. The court explained that while the defendant's "excommunication and professed desire to return to the church may have provided the jury with insight into" his relationship with the victim, there was no evidence to suggest that the defendant had shared that information with the victim "for the purpose of coercing or intimidating her into submitting to the charged conduct." *Id.* The court concluded that the evidence was not "an integral part of the charged conduct" because it did not "facilitate[] or otherwise play[] a role in the commission" of the crimes. *Id.*

¶66 In contrast, Blackwing's control and manipulation of the women did facilitate and play a role in the commission of the charged crimes. Under the State's theory, the conspiracy was formed because the women had been conditioned to follow Blackwing's commands. While the conditioning occurred before the motive to commit murder arose, it was still a necessary preliminary step to completing the crime. According to the State, it was Blackwing's unusual level of control over the women that enabled him to carry out the crimes. Because the evidence is intrinsic to the solicitation and conspiracy charges, rule 404(b) does not apply. Rather, the acts are "considered part of the case narrative and have important probative value that bears directly on the crime charged." *State v. Lucero*, 2014 UT 15, ¶ 14 n.7, 328 P.3d 841, *abrogated on other grounds by State v. Thornton*, 2017 UT 9, 391 P.3d 1016.[7]

*B. Rule 403*

¶67 Lastly, the district court conducted a rule 403 balancing test for the evidence of Blackwing's relationship with the three women. Because the court had determined that the evidence was subject to rule 404(b), it attempted to balance the permissible inferences that could be drawn from the evidence against the risk that the jury would draw an improper propensity inference. The court ruled that the "*general* nature and dynamics of the relationship" would not garner an improper inference from the jury at trial. But specific details of Blackwing's manipulation and control, such as his "cult-like bad acts," punishing the women for disobeying, making death threats, and requiring the women to call him "My Lord" carried "a significant propensity for improper inference" and have "little to no probative value in the instant case." The court determined that such evidence was "unduly prejudicial" and would "likely confuse or mislead the jury." It therefore concluded that "specific bad acts regarding the relationship between the women and Blackwing" would be excluded under rule 403.

---

[7] The district court ruled that this evidence was relevant under rule 402 "for the purpose of explaining the dynamics of the relationship between the parties." Neither party takes issue with this ruling, and Blackwing does not ask us to affirm on the alternative ground that the evidence was irrelevant. So, we proceed with analyzing the evidence's admissibility under rule 403.

¶68 We conclude that the district court exceeded its discretion by categorically excluding evidence of any specific acts intended to prove Blackwing's domination and control of his alleged co-conspirators. Because the acts are intrinsic to the charged crimes and not subject to 404(b), there was no need for the district court to weigh the permissible and impermissible inferences that could be drawn from the evidence. Instead, the court's task was to determine whether the risk of unfair prejudice substantially outweighed the probative value.

¶69 Where, as here, the evidence is part and parcel of the charged offense, the probative value of the evidence will be at its zenith. And the acts that the State identified in its notice are prejudicial only because they tend to prove the proposition for which they are offered. Because the evidence does not present a risk of unfair prejudice that substantially outweighs its probative value, the court exceeded its discretion in excluding it.

¶70 While we reverse the categorical exclusion of the "specifics of the alleged manipulation and coercion," the district court retains discretion to rule on rule 403 objections raised at trial. The danger associated with particular items, including the risk of unfair prejudice or the presentation of needlessly cumulative evidence, may substantially outweigh the probative value of that evidence on an item-by-item basis. *See* UTAH R. EVID. 403. But the blanket exclusion of all specific acts tending to show Blackwing's dominance over his alleged co-conspirators resulted from an incorrect application of the rules.

## CONCLUSION

¶71 We affirm the district court's order excluding evidence of Blackwing's conviction for the rape of Tina because the risk of unfair prejudice substantially outweighs the probative value of that evidence. We reverse the exclusion of the evidence regarding Blackwing's sexual assault of C.G. and treatment of his co-conspirators because that evidence is relevant, intrinsic to the charged crime, and its probative value is not substantially outweighed by the risk of unfair prejudice. We remand for trial or other proceedings consistent with this opinion.